SLATTON .v. TENNESSEE COAL, IRON & R. R. COMPANY,

AND

TENNESSEE COAL, IRON AND R. R. COMPANY, v. DYKES
*et al.*

(*Knoxville.*   September Term, 1902.)

1. **ADVERSE POSSESSION.** Outside of boundaries recited
   in a deed, is not under color of title and inoperative
   beyond actual possession.

   It is well settled that there can be no constructive adverse
   possession which is not based upon a claim under an as-
   surance or color of title purporting to convey an estate in
   fee and a possession outside of the boundaries recited in a
   deed, is not under such color of title, and, being limited in
   effect to the actual possession, can not be invoked by the
   possessor as constructive adverse possession of land within
   the deed.   (*Post, p.* 423.)

2. **SAME.** Not perfected, under doctrine of relation, by
   color of title subsequently acquired.

   Under our statutes, in order to perfect title by adverse posses-
   sion, there must be a concurrence of adverse possession for
   the full period of seven years and an assurance or color of
   title purporting to convey a fee under which the possessor
   claims during the whole of said period, and a color of title
   subsequently acquired can not be invoked to perfect, by re-
   lation, the adverse possession.   (*Post pp.* 423-424.)

3. **PAROL SALE OF LAND.** Is not void, merely voida-
   ble.   Vendee in possession under, holds for himself.

   It is now the law in this State that a parol sale of land is
   not void, but merely voidable; therefore, a vendee in pos-
   session of lands under a parol contract of sale holds for him-
   self, and not as a tenant at will whose possession inures to

the benefit, and perfects the title, of his vendor holding an assurance or color of title purporting to convey the fee. (*Post, pp.* 424-425.)

Cases cited and approved: Brakefield *v.* Anderson, 87 Tenn., 211; King *v.* Coleman, 98 Tenn., 571; Ellege *v.* Cooke, 5 Lea, 627; Sullivan *v.* Ivey, 2 Sneed, 487; Redmond *v.* Bowles, 5 Sneed, 551; Beard *v.* Bricker, 2 Swan, 50; James *v.* Patterson's Lessee, 1 Swan, 309; Fain *v.* Headerick, 4 Cold., 334.

Cases distinguished: Valentine *v.* Cooley, Meigs, 613; Napier's Lessee *v.* Simpson, 1 Tenn., 452; Winnard *v.* Robbins, 3 Humph., 614.

**4. CHAMPERTY. Extends only to actual possession where possessor has no color of title.**

A deed to lands, a part of which is in the adverse possession of another, but not under color of title, is champertous only to the extent of land in actual possession. (*Post, pp.* 425-426.

---

FROM MARION.

---

Appeal from Chancery Court of Marion County. T. M. McCONNELL, Chancellor.

A. L. ROBERTSON, for Slatton & Dykes.

SPEARS & HALL, for Tennessee Coal, Iron & R. R. Company.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

The Tennessee Coal, Iron & Railroad Company has appealed from the decree pronounced against it in these consolidated cases.

Slatton v. Tennessee Coal, Iron & R. R. Co.

The action is in ejectment, and involves the title and right of possession of a tract of land in Marion county. The facts found by the court of chancery appeals, speaking through Judge Wilson, are as follows: Slatton claims title under a deed from David Melton, dated March 11, 1875, and possession thereunder for over twenty years. Melton purchased the land by deed from M. M. Kilgore and R. Lane, February 24, 1874. Shortly after his purchase in March, 1875, from Melton, Slatton went into possession by his son, as he supposed, of the lands embraced in the boundaries of his deed, and made improvements thereon, such as clearing ten or twelve acres, building a house thereon, planting out an orchard, and has occupied the improvements ever since. As a matter of fact, the deed of Melton to Slatton in its terms and boundaries did not include the land upon which Slatton afterwards erected his improvements. The land, it appears, is in the shape of an irregular parallelogram. The description of the land in the deed from Melton to Slatton calls for a certain corner, thence to the second corner, thence to the third corner and thence to the beginning, omitting the fourth call. The result was that the description included only about one-half of the land purchased. Slatton, under the impression that his deed covered the whole tract, went into possession, erected a dwelling house, and inclosed several acres around his improvements, but located them outside the boundaries

Cates 1-14

of his deed.   He held possession of the land openly, adversely, and continuously, for eighteen or twenty years.   The omission in the deed to include the lands on which the improvements were erected was not discovered by Slatton until May 23, 1895, when he had his land surveyed.   Thereafter, to wit, November 5, 1897, Slatton filed a bill in the chancery court of Marion county against Melton to correct the errors and mistakes in the deed, and make its terms and boundaries conform to and embrace the land he had bought.   He specifically set out in his bill the boundaries his deed ought to have contained, and exhibited with the bill a plat showing what should be the boundaries in his deed, and the boundaries in the deed delivered to him.   The insistence of the bill was that the deed as made was incorrect and erroneous in the particulars pointed out as the result of mistake, inadvertence, or oversight.   The deed was corrected by the chancery court, and on appeal the decree was affirmed by the court of chancery appeals.   There was no appeal to this court.   The deed of Melton to Slatton, as corrected by the decree mentioned, embraces the improvements made by Slatton or his son, and which the father or the son has possessed and occupied since shortly after the purchase of the former from Melton.

It further appears that prior to the correction of the deed from Melton to Slatton, and on September 3, 1895, Slatton sold and conveyed by deed to Dykes & Brown about three and three

fourths or four acres of the land he bought from
Melton. Dykes & Brown, after their purchase from
Slatton, erected four houses on it, and have had con-
trol or possession, either in person or by tenants, ever
since, until their tenant, Northcut, attorned to the
Tennessee Coal, Iron & Railroad Company, as alleged
in its bill. Northcut, it appears, rented from Dykes
& Brown, and went into possession of the three or four
acres purchased by them from Slatton, and paid them
the rents until notified by the Tennessee Coal, Iron &
Railroad Company not to do so any longer, when
Northcut attorned to said company.

The foregoing statement embraces the finding of the
court of chancery appeals in respect to the title of
Slatton to the land in controversy. The title of the
Tennessee Coal, Iron & Railroad Company is found
by that court to be as follows: First, an entry, No.
5,521, for 5,000 acres in the name of Violet Hendricks,
dated December 1, 1836, and survey of this entry May
11, 1837; second, a grant issued on said entry March
15, 1839, to Burgess Matthews; third, the heirs of
Burgess Matthews, who died intestate, conveyed their
interest in said land by several deeds, in 1882, to E. O.
Nathurst and E. F. Colyar; fourth, Nathurst and Col-
yar, by deed, conveyed the land to the Tennessee Coal,
Iron & Railroad Company. The land embraced in
these various conveyances is the land included in the
said grant, and is the land claimed by the Tennessee
Coal, Iron & Railroad Company in its bill. The grant

and conveyances recited cover the land in dispute. "In other words," continues that court, "they cover and embrace all the land bought by Slatton from Melton, both that contained in the defective deed and the deed as corrected. So, it is clear and undisputed that, if the company has deraigned its title back to grant No. 6,765, aforesaid, it has the older paper title. It is equally clear from the proof that the Tennessee Coal, Iron & Railroad Company has never had any actual possession, either by itself, or by agent, or by tenant, of the land in dispute, until Northcut, as the original tenant of Dykes & Brown, attorned to it, a short while before this litigation arose, with respect to the land he had rented from Dykes & Brown." The court of chancery appeals in a supplemental opinion find as a fact that the Tennessee Coal, Iron & Railroad Company was in the open, peaceable, notorious, exclusive and adverse possession of the land embraced in the Violet Hendricks entry, No. 1,521, upon which grant No. 6,765 to Burgess Matthews was issued, for more than seven years before the institution of either of these suits; that is to say, it was in the open and adverse possession by its employees or tenants of lands embraced within the boundaries of said entry and grant for more than seven years before these suits were brought. Its possession was evidenced by houses and inclosures, but none of its possessions and inclosures were on the land conveyed by the deed of Lane and Kilgore to Melton, and not on the land con-

veyed in the deed of Melton to Slatton, original or corrected. The court of chancery appeals then summarizes the respective contentions as follows: Slatton rests his title on the deed of Melton, dated March 11, 1875, and open, notorious, continuous, adverse possession thereunder since that date. Slatton went into actual possession in person, or by his son, of the land he supposed he bought from Melton, and made improvements and inclosures thereon; and the land, he supposed, was covered by the deed of Melton to him, until he discovered the defect in such deed in May, 1895. But, as before stated, his improvements and inclosures were not within the boundaries of the defective deed, but were within the boundaries of the corrected deed. The court of chancery appeals also found as a fact that the Tennessee Coal, Iron & Railroad Company or its agents or employees knew, after Slatton bought from Melton, the land he claimed under his purchase, and all parties supposed his lines were as he claimed, and as they were established under his bill against Melton, until the defect in the boundaries was discovered when he had his land surveyed in 1895, and the agents of the company in cutting timber respected the lines as claimed by him, and all parties believed they existed under his deed as first made and delivered.

The contention of the company, under this state of facts, is, of course, that Slatton's possession, not being within the boundaries of his deed as made and de-

livered, was not under color of title, until the deed
was judicially corrected in 1897, and hence that the
statute of limitations does not operate to give him
title or to perfect his title.    At most, it is contended,
all that his possession could effect is to give him a de-
fensive possessory title that will enable him to retain
his possession within his actual inclosures.

A further defense of Slatton is that the deeds of Mat-
thews to Nathurst and Colyar and from the latter to
the Tennessee Coal, Iron & Railroad Company were
executed while he was in open and notorious posses-
sion of the land, claiming in his own right, and hence
said deeds are champertous.    Shannon's Code, sec.
3171 *et seq.*

With this statement of the facts, taken from the
opinion of the court of chancery appeals, we proceed
to state our opinion of the law which governs its de-
termination.

It is plain the Tennessee Coal, Iron & Railroad
Company has established a superior paper title to the
land in controversy.    It is also true that the adverse
possession of Slatton has not been made out, for the
reason that it was not held under an assurance or
color of title purporting to convey the fee.    The pos-
session of Slatton by his son, George Slatton, was
prior to the reformation of the deed from David Mel-
ton to John Slatton, and the fiction of relation can
not be invoked to perfect John Slatton's possession.
The possession of John Slatton of eight or ten acres

Slatton v. Tennessee Coal, Iron & R. R. Co.

of this land prior to the reformation of his deed was under a parol sale.    It is well settled that possession without a deed defining the land is only notice to the boundaries actually inclosed.    It is also held that a disseizor holds constructive possession of the whole tract only when his entry was under color of title by specific boundaries to the whole tract.    The first requisite of such color of title as will give constructive possession to the claimant is, therefore, some definite description showing the extent of the claim, which, as to the part constructively possessed, may be said to perform the same office as acts of ownership upon the parts in actual possession.    Without the paper title, the possession is limited by the *pedis possessio,* and it is immaterial whether the deed conveys a good title or not.    If no lands are described in it, nothing can pass, the deed is a nullity, and lays no foundation for a claim beyond the actual possession.    Sedgwick and Wait on Trial of Title of Land, secs. 767, 768.    In section 769 the same authors say: "There can be no constructive adverse possession which is not based upon a claim under some written instrument, constituting in form a paper title."    The idea of a parol sale being color of title so as to make out an adverse possession under the statute, as has been suggested in argument, is, of course, out of the question.

These principles, we take it, are so well settled as to be axiomatic in the law of ejectment.    Moreover, a

color or assurance of title by relation can not be invoked to perfect an adverse possession. Our statute contemplates that the title should be made out by the concurrence, first, of an adverse possession of seven years, and, second, an assurance or color of title purporting to convey the fee. Unless there is actual possession at the time under an assurance or color of title, that adverse possession can not be perfected, under the doctrine of relation, by a title subsequently acquired. It was also insisted on behalf of Slatton, that, inasmuch as he held the land outside of the boundaries of the Melton deed under a parol sale from Melton, he was, therefore, a tenant at will of Melton, and that his possession was Melton's possession, and perfected Melton's title; the deed from Kilgore to Melton being an assurance of title purporting to convey a fee, and that this title now inures to his benefit—citing *Valentine* v. *Cooley*, Meigs, 613 (33 Am. Dec., 166); *Napier's Lessee* v. *Simpson*, 1 Tenn., 452, and *Winnard* v. *Robbins*, 3 Humph., 614. It suffices to say that when those decisions were made a verbal contract for the sale of land, under the decisions of this court, was absolutely void. *Crippen* v. *Bearden*, 5 Humph., 129; *Hurst* v. *Means*, 2 Swan, 599. This rule has since been changed, and the law now is that a parol sale of land is not void, but voidable merely. There may be a specific performance enforced against either party if he fails or refuses to rely on the stat-

ute of frauds.   *Brakefield v. Anderson,* 87 Tenn., 211
(10 S. W., 360) ; *King v. Coleman,* 98 Tenn., 571.

Moreover, under the uniform holding of this court,
during the currency of the parol contract and until
it is repudiated, the vendee in possession holds for
himself, and not as tenant of the vendor.
*Redmond v. Bowles,* 5 Sneed, 551; *Sullivan v.
Ivey,* 2 Sneed, 487; *Beard v. Bricker,* 2 Swan,
50; *James v. Patterson's Lessee,* 1 Swan, 309
(55 Am. Dec., 737) ; *Fain v. Headerick,* 4 Cold., 334.
In some of our cases the vendee has been likened to a
*quasi* tenant of the vendor, but in those cases the parol
sale had been repudiated.   It appears, however, in the
case now being adjudged that the sale from Melton to
Slatton, so far from being repudiated, has been affirm-
ed, Slatton always claiming the land under his pur-
chase, and relying on the statute of limitation of seven
years.   He has never at any time claimed to be a ten-
ant of Melton.

In *Ellege v. Cooke,* 5 Lea, 627, Judge McFarland,
entered into a thorough review and discussion of the
cases, and the conclusion was reached that a purchas-
er in possession under a parol contract is not hold-
ing the possession for his vendor, so as to make out
the latter's title, by the first section of the act of 1819,
against a superior title in a third party.

We are further of opinion the court of chancery
appeals was in error in holding that the deeds from
Nathurst and Colyar to the Tennessee Coal, Iron &
Railroad Company were champertous.   This holding

was correct as to the land whereof Slatton was in actual possession, but under the finding of the court of chancery appeals, Slatton was only in possession of eight or ten acres outside of the land described in his deed, and the conveyance of Nathurst and Colyar to the Tennessee Coal, Iron & Railroad Company were only champertous to that extent. They were certainly not champertous as to the land outside of the description of Slatton's deed, and as to lands of which he had no possession.

It results that the decree of the court of chancery appeals must be reversed, and complainant's bill dismissed, and relief will be decreed the Tennessee Coal, Iron & Railroad Company under its bill. The costs will be divided.