## ARBUCKLE MINING & MILLING CO. *et al.* v. BEARD.

No. 6496.    Opinion Filed February 29, 1916.

(155 Pac. 1138.)

**APPEAL AND ERROR—Brief—Citation of Authority.** A plausible, but not convincing, argument in the brief, unsupported by citation of authority, is not sufficient to overcome the presumption indulged by the Supreme Court in favor of the correctness of the judgment of the trial court.

(Syllabus by Galbraith, C.)

*Error from District Court, Murray County;*
*R. McMillan, Judge.*

Action by Wm. F. Beard against the Arbuckle Mining & Milling Company and another. Judgment for plaintiff, and defendants bring error. Affirmed.

*Wm. T. Hutchings,* for plaintiffs in error.

*Geo. M. Nicholson* and *Gray & McVay,* for defendant in error.

Opinion by GALBRAITH, C. Action was commenced in the trial court by Wm. F. Beard against the Arbuckle Mining & Milling Company, a corporation, and the Tahlequah Mining & Development Company, a partnership, to cancel a mining lease, on account of the failure to prosecute development thereof, according to the terms prescribed therein. The answer was a general denial and justification by way of alleging a faithful compliance with the terms and conditions of the lease contract. A trial was had to the court and a finding made in favor of the plaintiff, and a decree entered canceling the lease and quieting title to the premises in the plaintiff. From that judgment, an appeal has beenn prosecuted to this court.

It appears from the record that in August, 1910, Wm. F. Beard was the owner of a tract of 510 acres of land located in Murray county, Okla., a part of which had been prospected and deposits of zinc ore discovered, but Beard did not have sufficient money to properly develop the property, and on the 17th day of August, 1910, in consideration of $1 and an agreement to pay a royalty of 10 per cent. of the value of the mineral mined, Beard executed a lease to the Arbuckle Mining & Milling Company, a corporation, for the development of said property. The lease contract was for a term of ten years and as long thereafter as valuable minerals "or other substances of value are found on said land, for the purpose of prospecting, mining, drill, boring, or digging for oil, gas, asphaltum, lead, zinc, and all and every other kind of valuable minerals, ore, fossil, vegetable, or other valuable substance whatsoever." The lease further provided that active development should commence within six months from the date thereof, "otherwise all rights and obligations secured to the second party under this lease and grant, or demise shall cease upon one month's notice in writing being served by the party of the first part." In February, 1911, Beard served notice of cancellation of the lease for failure to commence operation within the six months prescribed in the lease. A short time after the service of this notice, Beard agreed to waive the forfeiture of the lease, and consented that the same might be assigned to the Tahlequah Mining & Development Company, a partnership, and a contract was entered into with the latter company whereby it undertook and agreed to develop the property under the terms of the original lease, and to purchase machinery for a suitable ore concentrating plant or plants to be located on said leasehold. Some machinery was purchased and placed

upon the premises, and some ore was mined and samples sent to Dallas and other samples sent to Joplin for tests. It does not appear that any real, earnest work was done to develop the lease, but it rather appears that development was a secondary consideration, and that the principal thought of the parties in charge was the sale of stock in the company. The authorized capital stock of the Arbuckle Mining & Milling Company was $100,000, and it seems that $128,000 of stock was actually sold, but no payment of royalty, as provided in the lease, was ever made to Beard. In September, 1911, a part of the machinery which had been placed upon the premises was sold and removed, and later on the balance of the machinery was levied upon and sold for taxes against the company, and operations of development were suspended. In June, 1912, Beard served a written notice of cancellation of the lease, and on February 24, 1913, commenced this action to cancel the same.

Assignments of error are set out in the brief as follows:

"(1) In overruling the motion of the defendants for a new trial.

"(2) In overruling the demurrer of the defendants, interposed at the close of the plaintiff's testimony.

"(3) In overruling the defendants' motion at the close of the testimony to render a decision in favor of the defendants.

"(4) In rendering judgment against the defendants and canceling the mining leases offered in evidence as Exhibits 'A' and 'B' and contracts offered in evidence as Exhibits 'C' and 'D' and holding the same a cloud upon the title of the real estate of the plaintiff."

In support of these assignments of error, counsel for plaintiffs in error make the following argument:

"There can be no question that defendants complied technically with the leases and contracts offered in evidence. The contract was to be forfeited if certain prospecting was not done within six months of the date of the signing of the leases. Not only was this prospecting done, but a very large sum of money was expended in various ways in carrying out this contract in the endeavor to honestly develop the mines and secure the ore for all parties interested. There had not been a cessation of work for any length of time, and no bad faith is shown or proven on the part of the defendants. On the contrary, they were acting as reasonable, honest men would have acted under similar circumstances. Of course, there is written into every lease contract an implied agreement that the lease shall be developed reasonably. The reason for entering into the contract by the lessor is, naturally, that he expects to get some royalty out of the development of the property, and an indefinite period, or an unreasonably long period, of delay would unquestionably forfeit the lease, but such is not true in this case. On the contrary, it is shown that the defendants were constantly interfered with by the plaintiff, and that his threats to cancel the lease and his actions in carrying out those threats, either by suit or otherwise, kept the defendants at all times in a state of uncertainty.

"No case exactly like this one can be found in the books, and this court can only decide it by applying to it rules applicable to any transaction where the actions of the parties must always be reasonable and honest under the circumstances surrounding the given case. We respectfully submit that the court was thoroughly unwarranted in finding there was just cause for the cancellation of the leases in this case, and that this court should reverse its action."

The foregoing constitutes the entire argument presented upon the questions sought to be raised by the assignments of error. We are constrained to "take with

much salt" the statement made in the argument "that no case exactly like this can be found in the books." Although the facts disclosed by the record shows this to be a peculiar and novel venture, still the rules of law governing the case applied by the trial court in its decisions are neither new nor novel. A number of cases are cited in the brief of defendant in error sustaining the contention that a failure to develop a mining lease in good faith justifies its cancellation. There are a number of decisions of this court to the same effect. It is not claimed on behalf of the plaintiffs in error that any royalties were paid the lessor during the time (nearly two years) they were pretending to prosecute development, and it is admitted that they issued and sold $128,000 of the capital stock of their corporation, while its authorized capital stock was only $100,000. It thus appears that the claim that development of the leased premises was prosecuted in good faith and with diligence finds no support in the record.

The argument advanced on behalf of the plaintiffs in error, although plausible, is not convincing, and is not sufficient to overcome the presumption indulged by the Supreme Court in favor of the correctness of the judgment of the trial court. In support of this conclusion, the following cases are cited: *Title & Guaranty Co. v. Slinker*, 35 Okla. 128, 128 Pac. 696; *Francis v. First Nat. Bank of Eufaula*, 40 Okla. 267, 138 Pac. 140; *Connelly et al. v. Adams et al.*, 52 Okla. 382, 152 Pac. 607; *Patterson et al. v. Meyer*, 28 Okla. 304, 114 Pac. 256.

We therefore recommend that the judgment appealed from be affirmed.

By the Court: It is so ordered.