## VERNOR v. POORMAN.

No. 7574—Opinion Filed June 6, 1916.

(158 Pac. 615.)

### 1. Adverse Possession—Requisites.

In order for a party to be able to avail himself of an adverse possession, it must be exclusive.

### 2. Same—Possession of Another—Contingent Agreement to Pay Rent.

Where one person is in possession of a tract of land and agrees to pay the rent to a second party upon a certain contingency which never materializes, the said second party cannot successfully claim that he was in adverse possession of said tract against a third party during the time the first party held the same under said agreement.

### 3. Champerty and Maintenance—Conveyance by Person Out of Possession—Validity.

A conveyance of land made in contravention of the provisions of sec. 2260, Rev. Laws 1910, by the rightful owner, is utterly void as against the person holding adversely claiming to be the owner thereof under color of title, but as between the parties and all the rest of the world it is good, and passes the grantor's title.

### 4. Same.

Under sec. 2260, Rev. Laws 1910, a conveyance of land by the rightful owner while he was out of possession of the same and while the title to said land was in litigation is void, but only as to those parties engaged in the litigation. As to the grantor and third parties who had no part in and were not concerned with the litigation, such a conveyance is valid and operates to convey whatever title the grantor had.

### 5. Appeal and Error—Briefs—Citation of Authorities.

Attorneys representing parties here on appeal should not risk their client's interest by merely setting out an argument in their brief, but should cite authorities in support of their argument. No other kind of brief is worth while.

(Syllabus by Mathews, C.)

Error from District Court, Muskogee County; R. P. de Graffenried, Judge.

Action by Enloe V. Vernor against R. C. Armstrong, Jr., and others. Judgment for B. A. Poorman, defendant, and plaintiff brings error. Affirmed.

Chas. F. Runyan, for plaintiff in error.

De Roos Bailey, J. E. Wyand, and Chas. A. Moon, for defendant in error.

Opinion by MATHEWS, C. For convenience Enloe V. Vernor will be designated as plaintiff and B. A. Poorman as defendant. This action was instituted in the district court of Musko-

gee county by plaintiff against defendant B. A. Poorman and six other defendants that are not parties to this appeal, to quiet title to a certain tract of 40 acres of land located in said county, described as the N. E. ¼ of S. E. ¼, Sec. 34, T. 14 N., R. 17 E. All of the defendants except B. A. Poorman filed disclaimers.

The plaintiff alleged in his petition that he was the owner in fee and in possession of the land in controversy; that the land was the homestead allotment of one Lawrence Canard, a Creek freedman, and that on the 27th day of April, 1908, the said Canard conveyed said land by warranty deed to J. V. Tackaberry; that on the 1st day of March, 1911, the said Canard made a second deed to the said Tackaberry; and that on the 26th day of October, 1911, the said Tackaberry conveyed to plaintiff. Plaintiff further alleged that the said Tackaberry entered into possession of said land in August, 1908, and remained in possession until same was delivered to plaintiff at the time he purchased from him.

The defendant for answer alleged that on the 18th day of January, 1909, the said Canard conveyed said land in controversy to him by warranty deed; that on the 1st day of September, 1909, the said Canard conveyed to one G. B. Swanson the S. E. ¼, Sec. 34, T. 14 N., R. 17 E., which included both the surplus and homestead allotment of the said Canard; that on the 16th day of July, 1910, the said Swanson conveyed to defendant the entire tract last described; that prior to September 1, 1909, the said Canard was a minor, and incapable of making a valid conveyance of his lands; and that the deed of September 1, 1909, to the said Swanson was the first valid transfer thereof.

Plaintiff in his reply, as far as is necessary to here set out, alleged that the deed from Canard to Swanson under date of September 1, 1909, was void for the reason that the said Swanson had knowledge of the adverse possession of Tackaberry at the time of the execution of said conveyance, and that said deed was void for the further reason that at the time of said conveyance an action was pending in the district court of Muskogee county affecting the title to the W. ½ of S. E. ¼ and the S. E. ¼ of the S. E. ¼, Sec. 34, T. 14 N., R. 17 E., and on that account the conveyances to Swanson by Canard and from Swanson to defendant Poorman were void.

Plaintiff further replied that the said Tackaberry was in the quiet and peaceable possession of the land in controversy under color of title for more than one year prior to the execution of the deed on September 1,

1909, to Swanson, and for said reason said deed was void, and that the deeds from Canard to Swanson and from Swanson to Poorman attempted to convey an entire 160 acres when the title to 120 acres thereof was in litigation; that the entire transaction was therefore void.

Plaintiff replied further that the deed from Canard to Swanson of September 1, 1909, was intended to operate as a mortgage only, and was given solely for the purpose of securing a loan of the sum of $10 and the further consideration that the said Swanson should remove certain clouds from the title of the allotted lands of the said Canard, and that the said Swanson had failed and neglected to remove the clouds therefrom, and therefore the consideration for said conveyance failed.

Upon the issues thus joined the case was tried to the court, who found for the defendant. Upon the request of the plaintiff the court filed findings of fact and conclusions of law which were as follows:

"Findings of Fact.

"From all the evidence and the admission of the parties in this cause, I find the following to be the facts:

"First. That Lawrence Canard is a freedman citizen of the Creek Nation, enrolled and recognized as such and received an allotment of land by virtue of such citizenship, and that the land in controversy is the homestead allotment of said Lawrence Canard.

"Second. I find from the admission of parties that Lawrence Canard reached his majority according to the records of enrollment, as shown by the Dawes Commission, as of September, 1909.

"Third. I find that Lawrence Canard executed a warranty deed to his allotment of land to J. V. Tackaberry in August 27, 1908.

"Fourth. I find that Lawrence Canard, jointly by his wife, executed to G. M. Swanson a warranty deed conveying the entire allotment of 160 acres, being the southeast quarter of section 34, township 14 north, and range 17 east, on the 1st day of September, 1909, for a consideration of $1,200, and that by an agreement between Swanson and Canard the said Swanson paid to the said Canard the sum of $12 in cash as part of said consideration, and was to pay the remainder as soon as the title to said land was cleared; that suit was pending in the district court between J. H. Kennedy and Lawrence Canard at the time of the execution of the deed to Swanson to recover from Kennedy the surplus allotment of 120 acres: and that subsequently judgment was rendered in said cause in favor of Kennedy and against Canard for the said surplus allotment of 120 acres.

"Fifth. I further find that on the 1st day of March, 1911, Lawrence Canard executed and delivered to J. V. Tackaberry his warranty deed for a consideration of $400, whereby he conveyed the northeast quarter of the southeast quarter of section 34, township 14 north, range 17 east, being the homestead allotment of the said Lawrence Canard, and being the land in controversy in this suit.

"Sixth. I find that on October 26, 1911, that J. V. Tackaberry executed to Enloe V. Vernor a quitclaim deed for a consideration of $1 and other valuable consideration, whereby he conveyed to the said Vernor the northeast quarter of the southeast quarter of section 34, township 14 north, and range 17 east.

"Seventh. I find that G. M. Swanson, on the 6th day of July, 1910, executed to the defendant B. A. Poorman his certain quitclaim deed for a consideration of $1 and other valuable consideration, whereby he conveyed to the said Poorman the southeast quarter of section 34, township 14 north, and range 17 east.

"Eighth. I further find that D. H. Middleton took possession of the land under a rental contract from the mother or guardian of Lawrence Canard during his minority; that this land was raw prairie land inclosed in a large pasture used by the said Middleton for the grazing of cattle, and that this was the possession which Middleton had; after Tackaberry had taken a deed from Lawrence Canard in 1908, he went to Middleton and notified Middleton of this fact and claimed to be the owner of the land; that Middleton thereupon stated that the title to the land was in dispute, and that he would continue to hold possession of same and pay the rent to the party finally determined to own the title.

"Ninth. I find from the above finding of fact that the relation of landlord and tenant was not created and did not exist between Tackaberry and Middleton, and that therefore Tackaberry was never in the actual possession of the land, either himself or through a tenant.

"Conclusions of Law.

"I conclude that the deed executed by Canard to Tackaberry in 1908 was void for the reason that the allottee, Canard, was a minor at the date of the execution thereof.

"I conclude that the deed executed by the allottee, Canard, joined by his wife, to G. M. Swanson, on the 1st day of September, 1909, conveyed the legal title to the land in controversy to the said Swanson.

"I further conclude that the deed executed by G. M. Swanson to B. A. Poorman on the 6th day of July, 1910, conveyed the legal title to the land in controversy to B. A. Poorman.

"I further conclude that the deed executed by Lawrence Canard to J. V. Tackaberry on the 1st day of March, 1911, did not convey title to the land in controversy to the said

Tackaberry for the reason that Canard had no title to convey and that said warranty deed should be cancelled.

"I conclude that the quitclaim deed executed by J. V. Tackaberry to Enloe V. Vernor on the 26th day of October, 1911, did not convey title to the said Vernor for the reason that the said Tackaberry did not have title to convey and that said deed should be cancelled.

"Judgment will therefore be entered in favor of the defendant B. A. Poorman that he is the owner of the title and entitled to the possession of the land in controversy, and, further, that the deeds above mentioned all be cancelled, and that the defendant Poorman should recover his costs in this action.

"[Signed]    R. P. de Graffenried,
                    "District Judge."

Plaintiff presents here and discusses four propositions as follows:

"I. Deed under which Poorman claims is void because of the adverse possession of plaintiff in error's grantor at the time of its execution.

"II. The deed from the allottee to Swanson, under which Poorman claims, was not a conveyance in fee and did not pass title.

"III. Poorman's deed, under which he holds, was void because at the date of its execution a suit was pending involving the title to a portion of the lands conveyed, and, as the contract was for a single consideration and a single tract of land and was indivisible, it was void in whole.

"IV. Poorman could not be an innocent purchaser for value."

The first and second propositions raise questions of fact, and the third and fourth questions of law.

1. Under the first proposition plaintiff insists that the deed made by the allottee, Canard, to Swanson on September 1, 1909, being the deed relied upon by defendant to complete his chain of title, was void for the reason, as he contends, that the evidence shows that at the time of its execution neither of the contracting parties to the deed had been in possession of the lands conveyed nor received the rents or profits therefrom within a period of one year prior to the date of its execution, and that at the time of the conveyance said lands were in the adverse possession of J. V. Tackaberry.

The trial court found against plaintiff's contention, and specially found that Tackaberry was not in possession or holding adversely at the time of the execution of said deed, and the evidence produced at the trial fully sustains such finding. It appears from the evidence that the land in controversy was not used by any one for agricultural purposes, and had no house or improvements of any kind on it, but was inclosed in a pasture with a large tract of other land, and was used for the purpose of grazing cattle. One D. H. Middleton testified that he leased the land in controversy in 1902 for a period of five years, from the mother or guardian of Canard, and that he inclosed the same in a pasture embracing a large tract of land which he used for grazing purposes, and that about the time his lease expired J. V. Tackaberry told him that he then owned the land in controversy and wanted to lease it to him, but that after looking into it he found that there was a question about the title, and so he replied to Tackaberry that he would use the land, and, if it developed in the future that the land belonged to him, he would pay him the rent; that he was already in possession of the land, and retained it for the years 1908 and 1909, and was to pay the rent whenever title was shown in Tackaberry, but that he paid no rent, because the title was never perfected and no rent was demanded; that the agreement was for him to keep the land and to pay the rent to Tackaberry in the event it was determined he was the owner, and that, if he was not the owner, then the rent was to go to the proper owner.

In Flesher v. Callahan, 32 Okla. 283, 122 Pac. 489, it is said:

"A possession, to be adverse, must be open, visible, continuous, and exclusive, with a claim of ownership such as will notify parties seeking information upon the subject that the premises are not held in subordination to any title or claim of others, but against all titles and claimants."

In order for plaintiff to avail himself of an adverse holding the above excerpt, in definite language, tells us what must have been the nature of his adverse possession, and one of the essential requisites is that it must be "exclusive"; that is, Middleton must have held possession for Tackaberry against all other titles and claimants. We are unable to construe such a contingent and doubtful tenure as shown by the plaintiff in this case to fulfill the requirements of an adverse holding. We do not believe such a possession can be founded upon a contingency, and most assuredly not when based upon a contingency, as in the case at bar, which never ripened into a certainty, but, to the contrary, Middleton testified that the contingency under which he was to hold under Tackaberry—that is, if it developed that the land belonged to Tackaberry, then he would pay the rent to Tackaberry—was decided adversely to Tackaberry, and therefore it follows that Middleton at no time held the land for or under Tackaberry. Wade v. Crouch & Edwards, 14 Okla. 593, 78 Pac. 319;

Vaughan et ux. v. Holder, 41 Okla. 101, 137 Pac. 672; Jasperson v. Scharnikow, 150 Fed. 571, 80 C. C. A. 373, 15 L. R. A. (N. S.) 1178.

The second contention of plaintiff is that the deed made by Canard and wife to Swanson on September 1, 1909, to the entire allotment of 160 acres of the said Canard, was, in fact, a mortgage to secure a loan of $10. The court found that the deed by Canard and wife to Swanson conveyed the legal title to the land in controversy to Swanson, and that defendant Poorman obtained his title by virtue of the deed to him from Swanson on the 6th day of July, 1910. The plaintiff insists that both Canard and Swanson testified that the deed dated September 1, 1909, was intended as a mortgage to secure a loan, and that the court's finding on this proposition is not supported by the evidence. While we do not concede this contention, yet it becomes immaterial owing to the fact that the instrument showed on its face to be a warranty deed, and Poorman took a conveyance from Swanson without any notice that there was any verbal agreement, if such there was, that it should be, in fact, other than what its form declared it to be, a warranty deed, and we cannot see much equity in a party putting on the market what on its face shows to be a warranty deed, and then after the land thus conveyed passes into the hands of an innocent purchaser then be heard to say, either through himself or his privies, that it was an equitable mortgage only. Such a holding would have a tendency to unsettle titles and make it impossible for one to decide when he was getting a merchantable title. We believe the doctrine of the innocent purchaser, and the rule that, when a loss must be suffered by one of two parties, it should be borne by the one whose conduct brought about the loss, each preclude plaintiff's contention. We have examined the evidence, however, and believe same is sufficient to support the findings of the court thereon.

Plaintiff next urges the proposition that, as a suit was pending in the district court of Muskogee county on September 1, 1909, entitled M. S. Dowden and Lawrence Canard v. J. H. Kennedy et al., involving the title and possession of the surplus allotment of the said Canard, and as this suit involved a portion of the lands conveyed on September 1, 1909, by deed of Canard to Swanson, and as the contract was for a single consideration and a single tract of land and was indivisible, it was void in toto. The question whether or not a conveyance in a single deed of several distinct tracts of land for a single consideration, the conveyance being as to some of the tracts inoperative and void, shall be deemed void as to all of the tracts included, is not without difficulty, and it seems that the different jurisdictions are divided thereon. The plaintiff has cited the following cases which appear to support his contention: Gerlach v. Skinner, 34 Kan. 86, 8 Pac. 257, 55 Am. Rep. 240; Rayner Cattle Co. v. Bedford, 91 Tex. 642, 44 S. W. 410. 45 S. W. 554; Pinney v. Nat. Bank of Concordia, 68 Kan. 223, 75 Pac. 119, 1 Ann. Cas. 331; Stanard v. Sampson, 23 Okla. 13, 99 Pac. 796; McClurg v. Price & Sims, 59 Pa. 420, 98 Am. Dec. 356; Reeder v. Meredith, 78 Ark. 111, 93 S. W. 558, 115 Am. St. Rep. 22. The following are a few of the cases which hold to the contrary: Goodman v. Newell, 13 Conn. 75, 33 Am. Dec. 378; Searles v. De Ladson, 81 Conn. 133, 70 Atl. 589; McSpadden v. Starrs Mountain Iron Co. (Tenn.) 42 S. W. 497; Slatton v. Tennessee Coal, Iron & R. Co., 109 Tenn. 415, 75 S. W. 926; Jones v. Gatliff (Ky.) 113 S. W. 436.

However, we do not find it necessary to pass upon this question, and, as our own court has not passed thereon, as far as this jurisdiction is concerned, we leave it open, but, even if we concede plaintiff's proposition to be true, which we do not, yet he cannot avail himself of the situation, and is not in a position where he can complain, as none of his rights have been involved or transgressed.

A conveyance of land by a person not in possession, while such land is in litigation, is void by virtue of section 2259, Rev. Laws 1910. This section is closely associated with section 2260, which makes a conveyance void by one who is out of possession, or who has not taken the rents and profits for the space of one year before such conveyance. These two statutes are penal, and declare it to be a misdemeanor to make a conveyance under the conditions just enumerated, and the courts have uniformly held such conveyances to be void; but void as to whom?

In the case of Huston v. Scott, 20 Okla. 142, 94 Pac. 512, 35 L. R. A. (N. S.) 721, one of the principal cases relied upon by plaintiff, it is said:

"A conveyance of land made in contravention of the provisions of section 2026, St. Okla. 1893, by the rightful owner, is utterly void as against the person holding adversely claiming to be the owner thereof under color of title, but as between the parties and all the rest of the world it is good, and passes the grantor's title."

The last two lines in the above excerpt are to be noted, as they say that, "as between the parties and all the rest of the world, it is good and passes the grantor's title." So this case holds that such a conveyance is not uniformly void, but void only as to the adverse party and those holding under him. If the

deed is void under section 2260, then it is void only as to the party who was in adverse possession, and, if the deed is void under section 2259, then it is void only as to those parties engaged in the litigation, and not as to a third party who had no part in and was not concerned with the litigation. That such deeds were never intended to be declared void in toto is further evidenced by the case of Gannon v. Johnston, 40 Okla. 695, 140 Pac. 430, Ann. Cas. 1915D, 522, wherein it was held that, where land in the adverse possession of another is conveyed, the grantee may maintain an action in the name of his grantor to recover from the adverse holder, thus holding the deed between the parties not void, but operating to convey whatever title the grantor had.

The said sections 2259 and 2260 were taken bodily from the Dakota Code, and the case of Galbraith v. Payne, 12 N. D. 164, 96 N. W. 258, is directly in point and decisive of the question now under consideration in the case at bar. In the Dakota case just cited the court had under consideration a question similar to the one here, and it was there held:

"In Crary v. Goodman, 22 N. Y. 170, Selden, J., states that the purpose of the statute was to prevent the transfer of disputed titles, and compel their settlement between the original parties. Where the doctrine prevails, deeds executed in violation thereof are, without exception, held to be void. The invalidity of such deeds, however, exists only between the grantor and those holding adversely and their successors. As between the parties to the deed and all other persons, it is valid. It does not work a forfeiture of title in favor of the adverse possessor." Warvelle on Vendors, vol. 1, sec. 25; University of Vermont v. Joslyn, 21 Vt. 52; Livingston v. Proseus, 2 Hill (N. Y.) 526; Abernathy v. Boazman, 24 Ala. 189, 60 Am. Dec. 459; Mackintosh v. Stewart, 181 Ala. 328, 61 South. 956.

Following the holdings in the above-cited authorities, we conclude that plaintiff, Vernor, cannot be heard to argue that the deed from Canard to Swanson, made on the 1st day of September, 1909, was void because a suit was then pending involving the title to the land therein conveyed; for he was not a party to such suit, and had no interest therein. Canard, the grantor, was one of the litigants there, but he is not here complaining, and could not do so successfully, because, even though he was a party to the suit, the conveyance was good as to him, and effectively transferred all interest he had in the land.

The fourth reason assigned by plaintiff in error is that Poorman is not an innocent purchaser from Swanson because he took a quitclaim deed. Under the court's finding that Swanson took title under his deed of September 1, 1909, and that the deed was intended to convey title, and not as security, this question becomes immaterial.

We do not deem it inappropriate to here observe that, while the attorney for the plaintiff has filed herein an elaborate brief which shows much care, ability, and research in its preparation, and most certainly in his second proposition raises a serious question, and he has taken the pains to collate and cite numerous authorities in its support, yet the defendant saw proper to dismiss the same with a short argument without the citation of a single authority to support it. We have no complaint to make of the argument, because it was good, but attorneys who present cases here have no right to place the burden upon this court and consume its time in a laborious research for authorities to support their argument. Sound argument has weight, but in a well-considered case we find both approved argument and established precedent, and the best way to win one's case is to back it up with a citation of authorities in point. No other kind of brief is worth while. Cox v. Butts, 48 Okla. 147, 149 Pac. 1090; Arbuckle Min. & Mill. Co. v. Beard, 56 Okla. 144, 155 Pac. 1138.

For the reasons given, we recommend that the judgment be affirmed.

By the Court: It is so ordered.