MAGNOLIA PETROLEUM CO. et al.
v. BALL.

No. 33098. Jan. 4, 1949.

Rehearing Denied July 18, 1950.

Second Petition for Rehearing
Denied Oct. 24, 1950.

*223 P. 2d 136.*

Walace Hawkins, of Dallas, Tex., and Robert W. Richards, of Oklahoma City, for plaintiff in error Magnolia Petroleum Company.

Hatcher & Bond, of Chickasha, for plaintiff in error Transwestern Oil Company.

Twyford, Smith & Crowe, of Oklahoma City, for defendant in error.

GIBSON, J. Defendant in error, Ball, plaintiff below, claiming ownership under resale tax deed and possession of land in Grady county, brought this action to quiet title thereto against plaintiffs in error, and others, as defendants. Trial to court resulted in judgment for plaintiff from which this appeal is taken.

The lands were allotted to Stella Mae Trammell and at her death descended to John H. Goins, her husband, and John H. Goins, Jr., her minor son. Prior to her death in 1926 the allottee and her husband executed deeds conveying all interest in oil, gas and other minerals under the lands.

After allottee's death the lands became liable for taxation, and beginning with 1927 were assessed for taxes. No taxes were paid. In 1930 the county treasurer issued a tax sale certificate covering taxes for years 1927 and 1928. At the May 1938 resale the lands were sold for all delinquencies up to April 18, 1938, and plaintiff purchased same for his daughter, Thelma Wood, to whom the lands were conveyed by resale tax deed recorded July 30, 1938. Thereafter, on April 8, 1944, the grantee conveyed same to the plaintiff. Plaintiff's action was instituted December 18, 1944.

At the dates of the tax sale and the recording of the tax deed the owners of the land, exclusive of the mineral rights, and in possession thereof, were John H. Goins, Jr., a one-half interest, Reford Bond, Jr., and Jim Hatcher, owners of the other one-half interest as grantees of John H. Goins, Sr., under unrecorded conveyance. At that time the mineral interests were owned by Magnolia Petroleum Company a one-half interest, Transwestern Oil Company a one-fourth interest, and Walter H. Gant a one-fourth interest. All of the owners of the land except Bond and Hatcher but including John H. Goins, Sr., their grantor, and the owners of the mineral interests were made defendants to plaintiff's action. Goins, Sr., and Gant did not appear and were adjudged to be in default. John H. Goins, Jr., for whom guardian ad litem was appointed, attained his majority during 1945 and thereafter, during pendency of the action, conveyed his interest in the lands to the plaintiff. The trial was had upon the issues between the plaintiff and the defendant oil companies. Each of the latter filed answer and cross-petition wherein there is a denial of plaintiff's title and possession, a plea of the statute of limitation against plaintiff's claim of title and, averring its title in the mineral interest, each asks that same be quieted against claims of the plaintiff. And in each a tender is made to plaintiff of all taxes, penalties, costs and interest. Of the issues made

we deem it necessary to consider only those involving plaintiff's alleged possession which is denied and defendants' plea of the statute of limitations which is denied.

It is urged by plaintiffs in error that at the time of instituting his action Ball was not in possession of the premises and that neither he nor Thelma Wood, his grantor, had been in possession thereof, and that more than two years having elapsed since the date of the recording of the tax deed, without action to recover the land, the right to assert title to the land thereunder is barred by Tit. 12 O. S. 1941 §93(3). Defendant in error contends that the evidence is sufficient to support the court's finding that he was in possession. And he contends, further, that even if he were not in possession of the minerals no one was, and therefore, as holder of title thereto under the tax deed, he was entitled to quiet title thereto as in case of vacant lands.

The contention that plaintiff, without possession, was entitled to maintain his action to quiet title, is not sound. To sustain the contention there are cited from other states numerous decisions to the effect that where there has been a severance between the surface and the mineral estate in lands which are held by distinct titles the possession of one is not possession of the other. And, as committing this court to a similar construction of oil and gas mineral grants, there are cited champerty cases which are declared to hold that possession of the surface after severance is not possession of the mineral estate so as to make a conveyance thereof champertous. And, as decisive of the question, there is quoted from Barker v. Campbell-Ratcliff Land Co., 64 Okla. 249, 167 P. 468, the following:

"The possession of the surface by plaintiff for the purpose of cultivation gave him no possession of the oil and gas under the surface, and did not exclude the defendants from the right to go upon the land and prospect for the same."

In the cases cited the question involved was the effect of a conveyance alleged to be champertous. And, in Vernor v. Poorman, 59 Okla. 105, 158 P. 615 (cited and relied on), it is held:

"A conveyance of land made in contravention of the provisions of sec. 2260, Rev. Laws 1910, by the rightful owner, is utterly void as against the person holding adversely claiming to be the owner thereof under color of title, but as between the parties and all the rest of the world it is good, and passes the grantor's title."

From this it will be noted that the determinative question is not the fact of possession alone but possession plus claim of title to the subject of the conveyance. And it is in the light of the real question in issue that the language quoted from the Barker case is to be construed. The holding therein is reflected in the syllabus as follows:

"In order to make a holding adverse to one who has reserved all mineral rights and the right to enter thereon for the purpose of extracting the same, there must appear to have been some denial of his right, or some assertion of a claim inconsistent with his right, which does not necessarily appear where a person uses the land merely for agricultural purposes, as such use is entirely consistent with the right of another to prospect for oil and gas under the soil.

"Held, possession of the plaintiff for tillage was not adverse as to oil and gas, and the right to enter and explore for same, as against defendant Hoskins, who entered under a lease from defendant land company, and the lease therefore not champertous."

There is nothing in the holding to justify the conclusion that in this jurisdiction with the grant of the mineral interest there is a severance in kind of parts of the land or that with such grant the mineral interest granted is vacant and unoccupied until development operations have begun. In fact, the reverse is true in each instance. Oil and gas while in the earth are not the subject of absolute ownership in kind until

reduced to possession, but the owner of land as incident of such ownership has the exclusive property right to reduce to possession the minerals thereunder and this right is a proper subject of conveyance. Wright v. Carter Oil Co., 97 Okla. 46, 223 P. 835; Sunray Oil Co. v. Cortez Oil Co., 188 Okla. 690, 112 P. 2d 792. And there being no severance in kind of estates in land, there is no exception to the rule that the possession of the owner of the fee extends to the entire estate in the land but that same is not adverse to the right of the owner of the mineral interest to enter and explore. Thornton, Oil and Gas, vol. 2, §464 et seq. Hence the possession of the landowner, being subservient to the right of the owner of the minerals, is in legal effect the constructive possession of the owner of the mineral interest, because the landowner is a trustee to the extent his estate is burdened with the outstanding mineral rights. Such, in effect, is the holding in Barker v. Campbell-Ratcliff Land Co., supra; Hunter v. Pepis, 195 Okla. 660, 163 P. 2d 542, and Cochran et al. v. Godard, 182 Okla. 507, 78 P. 2d 692. See, also, Thornton, Oil and Gas, supra; Piney Oil & Gas Co. v. Scott (Ky.) 79 S. W. 2d 395; Ratliff et al. v. Sinberg (Ky.) 79 S. W. 2d 717; Yoss v. Markley (Ohio) 68 N. E. 2d 399. It follows there is no basis for the contention that plaintiff was entitled to maintain the action to quiet title without possession of the premises.

At the time of the resale the lands were in the possession of one Hoover who was holding under written lease executed by Goins, Sr., as natural guardian of Goins, Jr., and Hatcher as lessors. On August 15, 1938, Goins, Sr., was appointed guardian for Goins, Jr., and thereafter, under authority and approval of the county court, the land was annually leased in writing by said guardian and said Hatcher as lessors to said Hoover for each of the succeeding years to and including 1943. During the six-year period, Hoover sublet the premises for farming purposes and throughout that period his occupancy was exclusive and uninterrupted. There is no contention that plaintiff, Ball, or Thelma Wood, grantor of plaintiff, made any entry upon the land between the termination of Hoover's tenancy and the date of institution of the action. The only evidence relied on to prove the possession is the testimony of the plaintiff and an instrument in writing referred to therein. Pertinent thereto plaintiff testified, in chief, as follows:

"Q. Now, Mr. Ball, that was in 1938. After you got this deed, what did you do for your daughter? A. Well, I looked after everything for her. Q. What did you do with reference to this particular piece of property? A. Well, I was in Alex with Mr. Goins— Q. When was that? A. In 1938, along in May. Q. What occurred between you and Mr. Goins? A. He came up to me and said, 'I see you bought that land,' and he said, 'I could rent it and get something out of it' and I told him, well, I had bought it principally for the oil rights, because I don't farm and that's poor land. . . . Q. Now go ahead with the conversation. A. Well, I told him to go ahead and look after it. He said it wasn't worth nothing and I said I couldn't get nothing out of it. I didn't fool with it, I had several that I didn't do anything about because when you go to get the rent you wouldn't get it and so he said he would rent it out and get a little out of it. By the Court: Q. Who was it you were talking to? A. Mr. Goins. Mr. Crowe: Q. Did he continue to take charge of that land for you? A. Well, he kept it rented out is all I know. Q. Now, Mr. Ball, did he ever execute any written instrument concerning the possession of this property? A. Yes, sir. Q. What year was that? A. 1944, I think. Q. Did you see him sign that instrument? A. Yes, sir. Q. I hand you this instrument right here and ask you if that is the signature of the defendant, J. H. Goins, Sr., one of the defendants in this lawsuit? (Handing instrument to witness). A. Yes, sir."

And on cross-examination:

518

"Q. You say after you bought your tax deed you went to John Goins? A. I was in Alex and I met Mr. Goins and he came to me. Q. What did Mr. Goins say to you? A. He said he saw I had bought the tax title and I had the land. Q. Did he say you had the land? A. He said I had bought the tax title and that he could rent it and get something out of it. I told him I couldn't, that I bought it for the oil. Q. You know what it means to have a piece of land, to get possession. Were you in possession? A. Nobody was in possession. Q. Nobody? A. Mr. Goins claimed he had it. Q. You say nobody was in possession in 1938—is that right? A. I don't think so. Q. I am not asking you what you think. I am asking you if anybody was in possession. A. I don't know of anybody else that had it. Mr. Goins came to me— Q. Do you know who was in possession of it in 1938? A. He was supposed to be. Q. Who? A. Goins. Q. I am asking you if you know? A. Well, according to what he said, he was. Q. Well, do you know? A. That's all I know, is what he said."

The written instrument referred to was an affidavit of Goins, Sr., which was admitted in evidence over objection and assigned as error. Omitting caption and notary's certificate the same is as follows:

"I, J. H. Goins Sr. of lawful age, being first duly sworn according to law, upon my oath deposes and state: That I am well and personally acquainted with the following described property to-wit:

"Southeast Quarter of the Northwest Quarter of Section 36, Township 4 North, Range 6 West, Grady County Okla.

that said property has been in the possession of Thelma Wood, since May 10th, 1938, under Tax deed duly registered, under claim of title thereto adverse to all the world and paying the taxes thereto and holds possession to the same as above stated. Affiant claims no interest in above described property.

"Affiant further saith not.
"J. H. Goins Sr."

At the time of the tax resale the land was in the possession of the former owners. Both the former owners and the tax sale purchaser claimed title thereto. The issue was clearly one of law, and since the defendants were in possession it was incumbent upon the plaintiff to assert his title in ejectment within the time provided by law, unless by lawful means he could and did acquire the possession in the meantime. Nothing short of a lawful possession is sufficient to invoke the aid of a court of equity to quiet title. Stone v. Merrell, 195 Okla. 18, 154 P. 2d 953; 51 C. J. 192; 44 Am. Jur. 34, §41. In 44 Am. Jur. 34, §41, the rule is thus stated:

"In order to be entitled to claim relief, the claimant's possession of the property must be bona fide, and must have been acquired fairly and lawfully, and not by unfair means—for example, by force or an act of trespass."

Under the statute, Tit. 12 O. S. 1941 §1141, the possession which entitles one to maintain action to quiet title must be in the plaintiff himself or his tenant. That neither the plaintiff herein nor his grantor was ever personally in possession is beyond question. Hence the question turns on whether Hoover, who as a tenant was in possession, was the tenant of the plaintiff or his grantor.

The evidence fails to show either that Hoover was such tenant or, what is equally important, that plaintiff in good faith believed him to be such. Plaintiff does not say that Hoover entered as his tenant, or that either he or Hoover recognized the relationship between them as that of landlord and tenant. Nor does the evidence reflect that the plaintiff even considered that he was in possession through such tenancy. Previous to the sale Hoover entered the premises as the tenant of the then undisputed owners of the fee and, thereafter, continued in possession under authority of the same relation which was expressed in writing from year to year.

Not only was there no attornment in fact but, as a matter of law, if such attornment had occurred it would have been void as to the defendants and the possession of the plaintiff, if acquired thereby, unlawful and thus insufficient to support an action to quiet title. Stone v. Merrell, 195 Okla. 17, 154 P. 2d 952; 44 Am. Jur. 38, §47; Anno. 18 Ann. Cas. 860. Apart from the affidavit there is no evidence to warrant the conclusion that the plaintiff or his grantor at the time of the institution of his action was, or at any time prior thereto had been, in the possession of the premises. The introduction of the affidavit was over the objection of defendants, and error is assigned upon the action of the court in overruling the objection and admitting same in evidence. Authorities are cited which apparently support the assignment. Plaintiff in his brief makes no response thereto. Under the circumstances we would be justified in considering the error confessed. However, since we are of the opinion the affidavit is without probative value, we consider the question of error immaterial. The affidavit attests no material fact and therefore neither adds to nor overturns any fact that is in the evidence. Taken at its face value it is nothing more than the conclusion of a layman as to the legal effect of those facts that are in evidence and we are not persuaded thereby.

It is argued that plaintiff's grantor, Thelma Wood, acquired and held the possession of the premises as a result of the conversation had between plaintiff and Goins, Sr. There is a grave question whether one in Goins' position could clothe another with a lawful possession. The basis relied on as establishing the contemplated authority of Goins is not presented in the brief. But we deem such question immaterial because, whatever the authority of Goins and the intention of the two, the fact remains that for reasons stated the possession of the premises by the plaintiff, either in person or by tenant, was never achieved.

As evidence of possession stress is placed upon plaintiff's payment of taxes on the land for the years following the resale. This evidence was admissible, but as held in Dyer v. Baumeister, 87 Mo. 134, it was admissible only for characterizing the possession the plaintiff undertook to establish.

Though plaintiff without possession could not invoke the jurisdiction of the court, jurisdiction was not defeated, because with the filing of the cross-petition of the defendants to quiet title the court had jurisdiction to determine the entire question between the parties. Burns v. Bastien, 174 Okla. 40, 50 P. 2d 377; Newcomer v. Robison, 159 Okla. 236, 15 P. 2d 129.

That the plaintiff's right to assert title against the defendants is barred by the two-year statute relied on is clear. That the defendants upon making tender, as was done, are entitled to invoke said statute as a bar to any claim of the plaintiff, under the tax deed, to the premises is also clear. Lawyer v. Crowe Coal Co. et al., 196 Okla. 465, 166 P. 2d 1009. And it follows, on strength of the principle applied in Moore v. Kennedy et al., 196 Okla. 455, 165 P. 2d 832, that by reason of the fact plaintiff's right of action to assert title under the tax deed is barred that defendants are entitled to quiet their title against the same.

The judgment is reversed and cause remanded to the trial court, with instructions to award the plaintiffs in error judgments consistent with the views herein expressed upon their making good their tender in such manner as to the court may seem proper.

HURST, C.J., DAVISON, V.C.J., and WELCH and ARNOLD, JJ., concur. RILEY, CORN, and LUTTRELL, JJ., dissent.