### CONZO v. MOORE McCORMACK LINES, Inc.

United States District Court
S. D. New York.

March 19, 1953.

"Q. You received Workmen's Compensation insurance? A. Yes.

"Q. Did you file a claim with the Federal Compensation Commission? A. I don't believe I filed my claim. I was receiving my $20 a week compensation from the Workmen's Compensation insurance and the Federal Compensation Commission called me over. After I spoke with one of the men in the Federal Compensation Commission on Christopher Street in New York City, I got $25 a week compensation."

Plaintiff testified that he was a member of the International Longshoremen's Association, Local 327.

Jacob Rassner, New York City, for plaintiff.

Macklin, Speer, Hanan & McKernan, New York City (Leo F. Hanan and James N. Allan, New York City, of counsel), for defendant

LEIBELL, District Judge.

The defendant moves for an order granting defendant summary judgment dismissing the above action on the grounds that plaintiff has no right of action against the defendant, as a matter of law.

The plaintiff's deposition has been taken by the defendant. It appears therefrom that on November 5, 1947 plaintiff was working as a longshoreman for the defendant and was a hatch boss at Hatch No. 3 of the S.S. Mormacsaga supervising the discharge of a cargo of coffee from the lower hold. He claims that the ship's winch handling the drafts of coffee was giving trouble the day of the accident. Shortly before work ended for the day he was coming out of the combing, the space below the square of the hatch, and was hit on the head by a bag of coffee which fell down the hatch. He was badly injured and was confined to a hospital bed for forty days with a traction on his head. After he was released from the hospital he was obliged to wear a brace to hold his head, for about five or six months. His deposition contains the following (p. 10):

On May 5, 1949 plaintiff filed in this court the above entitled action for $50,000 damages under the Jones Act, 46 U.S.C.A. § 688. In his complaint he alleges that he was employed aboard the S.S. Mormacsaga "as a seaman in the capacity of longshoreman" and that the defendant "owned, operated, managed and controlled" the vessel. Plaintiff also alleges that he sustained his injuries due solely to the negligence of the defendant, its agents, servants and employees including the officers and "fellow seamen" aboard the vessel and due to the failure of the defendant to keep the vessel in a seaworthy condition and reasonable state of repair.

A Vice-President of the defendant has submitted an affidavit on this motion from which I quote the following:

"On November 5, 1947, the plaintiff, Sam Conzo, was employed as a longshoreman by Moore McCormack Lines, Inc. aboard the 'Mormacsaga' at Pier 16, Brooklyn, New York.

"The 'Mormacsaga' was owned and operated by Moore McCormack Lines Inc.

"Mr. Conzo was a hatch foreman, identification #15256, Social Security #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. He was paid wages for November 5, 1947, the date of the accident.

"On November 6, 1947, the employer submitted the employer's first report to

the deputy commissioner of the United States Employee's Compensation Commission administering the Longshoreman's and Harbor Workers' Compensation Act [33 U.S.C.A. § 901 et seq.] and thereafter notified its insurance carrier under the said act.

"Your deponent has been advised that Sam Conzo has received Compensation under the provisions of the Longshoreman's Act."

A Vice-President of the Liberty Mutual Insurance Company makes affidavit as follows:

"Liberty Mutual Insurance Company insured the liability of Moore McCormack Lines, Inc. for claims in connection with the Longshoremen's and Harbor Workers' Compensation Act, at the time plaintiff sustained injuries.

"Liberty Mutual Insurance Company has under the provisions of said act made payments of compensation to Sam Conzo, as an injured longshoreman, for disability arising on November 5, 1947 when Sam Conzo sustained injuries aboard the 'Mormacsaga' at Pier 16, Brooklyn, New York.

"Compensation payments were made continuous from November 6, 1947 through May 4, 1949 at the rate of $25.00 per week for a period of 78 weeks totalling $1950.00 to which should be added an advance of $60.00 making a total payment of $1990.00."

The attorney for the plaintiff submits an affidavit from which I quote the following:

"The law is well settled that until a final award is made, all payments made are considered voluntary payments and have no legal significance in a question involving litigation instituted by the injured person.

"As to the question of exclusiveness of the remedy, we respectfully submit that irrespective of the rights plaintiff may have under the Longshoremen's and Harbor Workers' Compensation Act, that being an employee of a shipowner, he is entitled to all of the benefits of the Jones Act."

Plaintiff's attorney is mistaken in assuming that until a final award is made all payments made as longshoremen's compensation under the Act have no legal significance. The Act itself is to the contrary. Under Section 14 of the Act it is provided:

§ 914. Payment of compensation. (a) Compensation under this chapter shall be paid periodically, promptly, and directly to the person entitled thereto, without an award except where liability to pay compensation is controverted by the employer.

"(b) The first installment of compensation shall become due on the fourteenth day after the employer has knowledge of the injury or death, on which date all compensation then due shall be paid. Thereafter compensation shall be paid in installments, semimonthly, except where the deputy commissioner determines that payment in installments should be made monthly or at some other period.

"(c) Upon making the first payment, and upon suspension of payment for any cause, the employer shall immediately notify the deputy commissioner, in accordance with a form prescribed by the Secretary, that payment of compensation has begun or has been suspended, as the case may be.

"(d) If the employer controverts the right to compensation he shall file with the deputy commissioner on or before the fourteenth day after he has knowledge of the alleged injury or death, a notice, in accordance with a form prescribed by the Secretary, stating that the right to compensation is controverted, the name of the claimant, the name of the employer, the date of the alleged injury or death, and the grounds upon which the right to compensation is controverted."

In the Sam Conzo case Moore McCormack Lines, Inc. took prompt action as required by the Act, as above indicated, and pursuant to that action the Insurance Company promptly and regularly paid the compensation to Conzo for a period of 78 weeks.

The defendant having complied with the provisions of the Act is entitled to the protection afforded by Section 5 of the Act against suits or actions by plaintiff, such as the action in this court.

Section 5 of the Longshoremen's Act provides:

"The liability of an employer prescribed in section 4 of this chapter shall be exclusive and in place of all other liability of such employer to the employee * * * and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee * * * may elect to claim compensation under this chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death. * * *" 44 Stat. 1426, 33 U.S.C.A. § 905.

The Court of Appeals for the Third Circuit has recently interpreted and applied that section of the Act in the case of Smith v. The Mormacdale, 198 F.2d 849, 850. In that case the libelant was a longshoreman who was injured aboard the ship. He filed a libel in rem. The ship was owned by the same corporation as that which employed the libelant as a stevedore. The court held that the libelant (the longshoreman) was in effect suing his employer, the owner of the ship, when he filed a libel in rem against the ship and that he could not maintain the action because as a longshoreman covered by the Compensation Act his remedy against his employer was exclusively under the Act. The court stated:

"It is abundantly clear that the benefits provided for the employee by the provisions of the Act constitute the limit of the employer's liability. Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 102, 66 S.Ct. 872, 90 L.Ed. 1099 [1946 A.M.C. 698]; Swanson v. Marra Bros., 1946, 328 U.S. 1, 6, 66 S.Ct. 869, 90 L.Ed. 1045 [1946 A.M.C. 715]. Where the vessel is the property of the employer, and action against the vessel is realistically an action against the employer, collection of damages out of the ship is, of course, an indirect way of collecting from the owner-employer. Samuels v. Munson S.S. Line, 5 Cir., 1933, 63 F.2d 861. To impose this additional liability on the employer in the situation where he is also ship owner would radically distort the intent of Congress in enacting the Longshoremen's Act."

Some years ago the Fifth Circuit Court of Appeals expressed a similar opinion in Samuels v. Munson S.S. Line, 5 Cir., 63 F.2d 861. The reasoning in that case has the same sound basis, namely that a longshoreman who is covered by the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., may not sue his employer for injuries received while performing the work for which he was employed; his remedy is limited to compensation under the Act.

Defendant's motion for a summary judgment dismissing the complaint herein is granted.