**PHILLIPS PETROLEUM CO.**

v.

**CABOT CARBON CO.**

No. 4723.

United States Court of Appeals
Tenth Circuit.

Feb. 12, 1954.

Rehearing Denied April 12, 1954.

R. M. Williams, Oklahoma City, Okl. (Rayburn L. Foster, Harry D. Turner, Bartlesville, and Cecil C. Hamilton, Oklahoma City, Okl., were with him on the brief), for appellant.

Robert M. Rainey and Streeter B. Flynn, Oklahoma City, Okl. (Homer D. Johnson, Pampa, Tex., was with them on the brief), for appellee.

Before HUXMAN, MURRAH and PICKETT, United States Circuit Judges.

HUXMAN, Circuit Judge.

The controversy in this case arose out of a contract between Phillips Petroleum Company, herein referred to as Phillips, and Cabot Carbon Company, herein referred to as Cabot. The subject matter of the contract was oil and gas leases and oil and gas mineral interest owned by Cabot. In the contract Cabot agreed to assign to Phillips specified oil and gas leases owned by it and agreed to execute such leases with respect to oil and gas mineral rights of which it was the owner. The contract contained a provision reserving to Cabot an overriding royalty. Paragraph 4 of the contract provided that Cabot should in addition to the ⅛ royalty provided in the leases "reserve an undivided interest in the natural gas underlying said lands or in any natural gas which may be produced therefrom * * * and equal to one-fourth of seven-eighths of all the gas produced. Phillips shall become the owner of the gas when produced and will account to Cabot for said one-fourth of seven-eighths of the gas produced at a value of four cents (4¢) per MCF."

Phillips developed the premises and brought in numerous gas wells. It paid Cabot for the ¼ overriding royalty interest in the gas produced at the rate of four cents per MCF as provided for in the contract. Subsequent to the execution of the contract and while Phillips was producing gas from the leased premises, on December 9, 1946, the Oklahoma Corporation Commission pursuant to statutory authority entered its Order No. 19514, fixing a minimum well head price for gas of seven cents per MCF for gas taken from producing structures or formations. The order provided "That no natural gas shall be taken out of the producing structures or formations * * * at a price, at the well head, of less than 7¢ per thousand cubic feet of natural gas * * *." Thereafter on July 29, 1952, the Commission issued a second Order No. 26096, raising the minimum well head price of gas to 9.8262 cents per MCF. This order provided "That no gas shall be produced from any well * * * at a price of not less than 9.8262¢ per thousand cubic feet if sold at the well head * * *." After the issuance of these two orders, Phillips continued to pay Cabot for the ¼ overriding royalty interest in the gas produced at the contract price of four cents.

On November 28, 1952, Cabot instituted this action alleging that Phillips was obligated to pay to it the prices fixed in the two orders by the Commission. It sought recovery of the difference between the amount due under the minimum prices fixed by the regulations and the amount received under the contract rate of four cents per MCF. Trial was had to the court. The court made findings of fact and conclusions of law. It concluded that Cabot was the owner of the ¼ of ⅞ of all gas and agreed to sell it to Phillips at four cents per MCF; that the contract was subject to the police power of the State of Oklahoma; that the two price regulations were valid and became a part of the contract and that the price fixed therein superseded the contract price of four cents. In a memorandum opinion the court made a further finding that Phillips and Cabot were joint producers and that Cabot was a seller and Phillips a purchaser of the gas in question at the well head and that Phillips was obligated to pay the price as fixed in the two orders notwithstanding the contract price of four cents. Judgment was entered accordingly D.C., 114 F.Supp. 953. This appeal challenges the correctness of the court's findings and conclusions and the judgment based thereon.

Phillips' six assignments of error are grouped and argued under three points. They are, (1) the minimum price orders are not applicable to payments by Phillips to Cabot under the contract, (2) the court erred in failing to hold that if the minimum gas price orders of the Commission are interpreted as having application to or affecting the sums payable by Phillips to appellee under the contract the said orders are to that extent void for want of statutory or other lawful authority on the part of the Commis-

sion to make and enter the same, and (3) the court erred in failing to hold that if the minimum gas price orders of the Commission are interpreted as having application to the prices fixed in the contract they are to that extent void for the reason they violate Sections 7 and 15 of Article II of the Oklahoma Constitution and Section 10 of Article I and Section 1 of the fourteenth Amendment to the Constitution of the United States.

Under its first assignment Phillips argues first that the orders apply only to sales of gas by producers and second that Cabot was not the owner of any interest in the gas produced. It is argued that the overriding royalties reserved to Cabot constituted a part of the consideration for the leases; that when the gas was produced Phillips was the owner thereof, so that Phillips was the producer and seller, and not a purchaser, and that the requirements of the price orders were fully met when Phillips produced the gas and obtained the prescribed price after fractionation and sale. It is to be noted that the orders by the Commission do not refer to sales or purchases by producers. The first order made it unlawful to "take gas" from a producing structure at a price at the well head of less than 7¢ and the second order provided that no gas shall "be produced" at a price at the well head of less than that fixed therein. The clear import of the regulations is that the first transaction involving the obligations to pay or account for gas removed from the producing horizon must be at the prices at the well head as fixed in the regulations. Thus if an operator removes its own gas it must receive the prices fixed in the order at the well head and if it acquires the interest in the gas reserved to others it must pay or account to them for the minimum prices fixed at the well head.

It is not correct to say that Cabot owned no interest in the gas in place. Much has been written with respect to title to gas and oil in place. Many cases including cases from Oklahoma state that oil and gas are not subject to ownership prior to production and reduction to possession. Yet all these cases recognize that reservations in deeds of conveyances of surface rights of an interest in oil and gas in place or such reservations under leases conveying an interest in such minerals with right to explore and reduce to possession constitute an interest in such minerals and that such reservations are valuable property rights. Furthermore, Oklahoma by statute has declared that "All natural gas under the surface of any land in this state is hereby declared to be and is the property of the owners, or gas lessees, of the surface under which gas is located in its original state." 52 O.S.A. § 231. And this statute has been regarded as adopting the theory of ownership of gas in place, and that a well in the common source of supply reduces the gas to possession. See Conservation of Oil and Gas, a History, published by the Section of Mineral Law of the American Bar Association. And in Magnolia Petroleum Company v. Ball, 203 Okl. 514, 223 P.2d 136, 137, the court said that while oil and gas while in the earth are not subject to absolute ownership in kind until reduced to possession "the right to reduce oil and gas to possession is a valuable property right which may be conveyed."

The contract between Phillips and Cabot recognizes a right in Cabot to an interest in the gas in place. In the contracts and leases the parties treated Cabot as the owner of the gas. The contract provided that Cabot would reserve an undivided interest in the natural gas underlying the lands or any natural gas which would be produced therefrom. In the assignment of the leases which Cabot held it reserved "unto itself and its successors and assigns an undivided interest in the natural gas underlying the lands covered by this assignment and *produced therefrom* equal to one-fourth (¼) of seven-eights(⅞) of all gas *produced from said lands* * * *." All the conveyances between the parties recognized such interest in the gas in place and in the production

thereof. Such provisions are wholly inconsistent with the premise that Phillips became the owner of all the gas at the instance of production and that Cabot had no interest therein. The provision that "Phillips shall become the owner of the gas when produced" must be considered in context with all the rest of the provisions of the contract and the various assignments between the parties. It was no doubt inserted to make sure that Phillips should have the right to all the production from these leases including its interest therein, as well as the interest of Cabot, upon payment therefor. When so considered, the practical effect thereof was to give Phillips the right to receive Cabot's interest in the production by paying therefor the contract price of 4¢.

Because of the conclusions we have reached as outlined above, it is not necessary to consider whether Phillips and Cabot were joint owners or whether Phillips was a joint producer and purchaser and Cabot a joint producer and seller of gas as found by the trial court.

A casual reading of the two price regulations makes it clear that they were promulgated not only to prevent physical and economic waste but also to protect the correlative rights of all having an interest in the common source of a supply of gas, including the interest of the landowner, royalty holders, as well as others who had an interest therein. That the Commission had the statutory authority to protect the correlative rights of all having an interest in a common source of supply of gas is clearly manifest from the decision of the Supreme Court of Oklahoma in Cities Service Gas Company v. Peerless Oil & Gas Company, 203 Okl. 35, 220 P.2d 279, 284. Thus the court in that case said, "Obviously, the protection of the interest of all owners of the gas is the intent of the statute and such is the standard of guidance to the Corporation Commission acting thereunder" and that the provision of the 1915 Statute [1] was not only to prevent excessive drainage and waste but also to protect the "interest of the public and the interest of all those having a right to take from a common reservoir" and the court said that the provision for the protection of the interest of all those having a right to produce gas from a common source of supply had reference "to the owners of the land overlying the gas and such interests as they have conveyed." The court alluded to the fact that without regulatory power prices to landowners or royalty holders might be so reduced as to result in an exhaustion or dissipation of their interest without having received any reasonable compensation and each would thus suffer waste of a valuable reversion.

What has been said disposes of Phillips' second contention that if the Commission's orders be construed as applying to the contract price of four cents then the orders are void for want of statutory authority to promulgate them. This is just another way of saying that the statute authorized the Commission to promulgate regulations only with respect to sales by producers. Quotations from the opinion of the Supreme Court in Cities Service Gas Company v. Peerless Oil & Gas Company, supra, as set out above, as well as other statements therein, impel the conclusion that the scope of the statute under which the regulations were promulgated was not so narrowly limited.

Neither is Phillips' final contention that, if the two orders in question are interpreted as applicable to the contractual provisions for the payment of Cabot's overriding royalty interest in the production, they contravene the provisions of the Fourteenth Amendment to the Constitution well taken. The Supreme Court of Oklahoma held that neither the statute nor the two regulations promulgated thereunder violated either the Oklahoma Constitution or the Constitution of the United States and this construction of the statute and of the regulations was approved by the Su-

1. 52 O.S.A. § 239.

preme Court of the United States in Cities Service Gas Company v. Peerless Oil & Gas Company, 340 U.S. 179, 71 S. Ct. 215, 95 L.Ed. 190. While the specific question before the Oklahoma Court was as stated by Phillips the validity of the order with respect to the rights and liability of Phillips as to the gas it purchased from Peerless Oil and Gas Company, the Oklahoma Supreme Court did not there decide only that narrow question. It viewed and considered the scope and effect of the statute and the powers of the Commission thereunder in its broadest aspect and passed upon the constitutionality of all phases thereof both with respect to the State and Federal Constitutions. We think that the opinion by the Supreme Court of Oklahoma clearly holds that, both under the State and Federal Constitutions, the State has the power and authority to pass legislation regulating the production and marketing of gas to prevent physical and economic waste and to protect the correlative rights of producers, vendors, landowners, royalty owners or anyone else having an interest in a common source of supply of gas to the end not only that waste will not be committed but also to the extent that the economic interest of any owner of any interest therein will not be dissipated and destroyed without a fair return to him and that this construction was approved by the Supreme Court of the United States in Cities Service Gas Company v. Peerless Oil & Gas Company, supra.

The judgment of the trial court is affirmed.

PICKETT, Circuit Judge (dissenting).

Prior to March 10, 1944, Cabot owned oil and gas leases on certain lands and unleased gas rights in other lands in the Hugoton Gas Field in Texas County, Oklahoma, and Hansford County, Texas. Approximately thirty-nine thousand acres were in Oklahoma. On March 10, 1944, a contract was entered into wherein Cabot assigned and transferred its interests to Phillips. The consideration

for such transfer and assignment was $530,673.50 in cash, the customary one-eighth royalty of all gas produced and one-fourth of the remaining seven-eighths of all gas produced. It is this last provision that prompted this action as it provided that: "Phillips shall become the owner of the gas when produced and will account to Cabot for said one-fourth of seven-eighths of the gas produced at a value of four cents (4¢) per MCF." The trial court held that this amounted to a sale of the gas as it was produced and that the sale was subject to the Commission's conservation orders of December 9, 1946 and July 29, 1952. The majority of this court agrees. It is my view that the reservation of one-fourth of seven-eighths of the gas produced to be paid for by Phillips at four cents per MCF was part of the consideration for the acquisition of the leases and gas rights, and that the orders, if applied to this transaction, had no relation to conservation purposes contemplated by the Oklahoma statute and are not within the power of the Commission.

There are relevant questions of law which are well settled in Oklahoma. The State of Oklahoma, in the exercise of its police powers, has the authority in the public interest and to protect correlative rights, to regulate the taking of natural gas from the ground and the Commission's orders are a valid exercise of that power. Natural Gas Pipe Line Co. of America v. Panoma Corp., Okl., —— P.2d ——, decided September 15, 1953; Cities Service Gas Co. v. Peerless Oil & Gas Co., 203 Okl. 35, 220 P.2d 279, affirmed 340 U.S. 179, 71 S.Ct. 215, 95 L.Ed. 190; Phillips Petroleum Co. v. Oklahoma, 340 U.S. 190, 71 S.Ct. 221, 95 L.Ed. 204. The police power referred to may be exercised, "to prevent waste, protect the interests of the public, and of all those having a right to produce therefrom, and to prevent unreasonable discrimination in favor of any one such common source of supply as against another." Cities Service Gas Co. v. Peerless Oil & Gas Co., supra, 340 U.S. at

page 185, 71 S.Ct. at page 219. Oil and gas in Oklahoma are not subject to ownership in place. Title may be obtained only upon production and reduction to possession.[2] The Oklahoma courts have held in a number of cases that payments for oil and gas leases, including royalties in the oil and gas produced therefrom, constitute the consideration for the acquisition of the leases or rights and are not the purchase price of oil and gas. In other words, such royalties are compensation provided for in the lease or contract to be paid to the owner for the privilege of prospecting for and producing oil and gas from the lands.[3]

Under the contract in this case Cabot, as part of the consideration, expressly granted and assigned to Phillips the described leases and gas rights subject to the reservation of one-fourth of seven-eighths of the gas underlying and produced therefrom by Phillips, which was required to account to Cabot for such production on the basis of four cents per MCF. Phillips then became the owner of the leases and other rights conveyed. It acquired the exclusive right to explore, develop and operate the property. It was to be the sole producer of the gas and it had the sole and exclusive right to take and market or otherwise dispose of all gas produced. Cabot had no right to enter upon, explore, develop or otherwise operate the property. It was to have no voice in the management and it was to pay no part of the cost of development and production. It had no right under the terms of the contract to take in kind, handle, market or otherwise dispose of any part of the produc-

tion. The contract specifically provided that upon production Phillips would be the owner of the gas. So long as the contract was in effect the only right that Cabot had was to receive the consideration provided for in the contract which included the payment of money measured by one-fourth of seven-eighths of the gas produced at four cents per MCF. Upon payment of those sums, Cabot received the consideration for which it bargained.

The Commission derives its power from the statute which authorizes and directs it "to regulate the taking of natural gas from any or all such common sources of supply within the state, so as to prevent waste, protect the interests of the public, and of all those having a right to produce therefrom, and to prevent unreasonable discrimination in favor of any one such common source of supply as against another." 52 Okl.St. Ann. § 239. The provisions of the statute are the guide posts for the Commission to follow to accomplish its purposes. The power of the Commission does not extend beyond the statutory provisions. Cities Service Gas Co. v. Peerless, 220 P.2d at page 288. If the Commission had the statutory authority to make an order modifying the rate of payment to Cabot, it could do so only if its action were a valid and reasonable exercise of the state's police power. In order to constitute a valid and reasonable exercise of that power, a statute, rule or regulation which affects private contracts or property rights may be upheld only when it relates to the public welfare or is in the public interest.[4] A statute,

**2.** Replogle v. Indian Territory Illuminating Oil Co., 193 Okl. 361, 143 P.2d 1002; Harmon v. Oklahoma Tax Commission, 189 Okl. 475, 118 P.2d 205; Sunray Oil Co. v. Cortez Oil Co., 188 Okl. 690, 112 P.2d 792; Rich v. Doneghey, 71 Okl. 204, 177 P. 86, 3 A.L.R. 352; United States v. Stanolind Crude Oil Purchasing Co., 10 Cir., 113 F.2d 194.

**3.** Hinkle v. Gauntt, 201 Okl. 432, 206 P. 2d 1001; McCullough v. Almach, 188 Okl. 434, 110 P.2d 295; McCullough v. Burks, 185 Okl. 502, 94 P.2d 541; Carroll v.

Bowen, 180 Okl. 215, 68 P.2d 773; Wright v. Brush, 10 Cir., 115 F.2d 265; Alexander v. King, 10 Cir., 46 F.2d 235, 74 A.L.R. 174, certiorari denied 283 U. S. 845, 51 S.Ct. 492, 75 L.Ed. 1455.

**4.** Thompson v. Consolidated Gas Utilities Corp., 300 U.S. 55, 57 S.Ct. 364, 81 L.Ed. 510; Rindge Co. v. Los Angeles County, 262 U.S. 700, 43 S.Ct. 689, 67 L.Ed. 1186; Great Northern Railway Co. v. Cahill, 253 U.S. 71, 40 S.Ct. 457, 64 L.Ed. 787; Myles Salt Co. v. Board of Com'rs of Iberia Drainage District, 239 U.S. 478,

rule or regulation may not, under the guise of police power or public interest, impair or interfere with private contracts or property rights.[5] This rule was discussed at length in Oklahoma Nat. Gas Co. v. Choctaw Gas Co., supra [205 Okl. 255, 236 P.2d 977], where it was said, "The police power must at all times be exercised with scrupulous regard for private rights guaranteed by the constitution, and then only in the public interest and not for the benefit of a private company." When Phillips obtains the minimum price for the gas at the wellhead, the conservation purposes of the orders are accomplished. The orders cannot be extended to affect the payments due to Cabot when those payments have no relation to the purposes of the statute or the orders. Such an application of the order in no way benefits the public welfare or the public interest but only provides a benefit to Cabot not anticipated by its contract and increases the amount which Cabot agreed to accept for its interests.

If the Commission has the power to increase the payments required under this particular provision of the contract, is there any reason why it could not increase the cash payment and also find that the customary one-eighth royalty is not enough and order the payment of a larger royalty? This is not what the Commission was trying to accomplish or what it had the power to do. It sought for conservation purposes to regulate the price for which gas could be taken from the ground and be sold at the wellhead and it did not undertake to alter royalty provisions in existing contracts. In doing this, the Commission recognized that generally royalty owners would benefit but the purpose of its orders was to prevent waste, conserve the natural resources of Oklahoma, and protect the interest of the public and of those having a right to produce from a common source of supply. This it has the right to do. For these purposes only it has the power to fix a minimum price for which gas may be sold at the wellhead. Phillips is bound by the orders when it sells the gas, but the State has no right to say what a person shall pay for the acquiring of oil and gas leases or gas rights. I would reverse the judgment.

36 S.Ct. 204, 60 L.Ed. 392; Great Northern Railway Co. v. Minnesota, 238 U.S. 340, 35 S.Ct. 753, 59 L.Ed. 1337; Missouri Pacific Railway Co. v. Nebraska, 217 U.S. 196, 30 S.Ct. 461, 54 L.Ed. 727; Hairston v. Danville & W. Ry. Co., 208 U.S. 598, 28 S.Ct. 331, 52 L.Ed. 637; Cole v. La Grange, 113 U.S. 1, 5 S.Ct. 416, 28 L.Ed. 896; Citizens' Savings & Loan Association v. Topeka, 20 Wall. 655, 87 U.S. 655, 22 L.Ed. 455.

5. New State Ice Co. v. Liebmann, 285 U.S. 262, 52 S.Ct. 371, 76 L.Ed. 747; State of Washington ex rel. Seattle Title Trust Co. v. Roberge, 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210; Burns Baking Co. v. Bryan, 264 U.S. 504, 513, 44 S.Ct. 412, 68 L.Ed. 813; Oklahoma Natural Gas Co. v. Choctaw Gas Co., 205 Okl. 255, 236 P. 2d 970.