370 F.2d 533
 Elizabeth Jane BEZZI, E. M. Woody, Marie Woody, M. Cliff
West, Robert L. Gerry, Jr., individually and as Trustee of
the Nancy L. Gerry Trust, and Gerry Brothers & Co., a
limited partnership, Appellants,
v.
F. M. HOCKER, individually, W. E. Hocker, Jr., individually,
Shell Oil Company, a corporation, Noel Jones, F.
M. Hocker and Walter E. Hocker,
Trustees, Appellees.
 No. 8388.
 United States Court of Appeals Tenth Circuit.
 Dec. 27, 1966.
 
 Barth P. Walker, of Walker & Waston, Oklahoma City, Okl., for appellants.
 V. P. Crowe, of Crowe, Boxley, Dunlevy, Thweatt, Swinford & Johnson, Oklahoma City, Okl. (Andrew M. Coats, Oklahoma City, Okl., with him on the brief), for appellees.
 Before PICKETT, LEWIS and HICKEY, Circuit Judges.
 PICKETT, Circuit Judge.
 
 
 1
 Elizabeth Jane Bezzi, one of the appellants, brought this action to recover her proportionate share of the proceeds from the sale of gas procuced by the unit operator from the Elk City Hoxbar Sand Conglomerate Unit subsequent to January 11, 1961.[1] Appellants owned a mineral interest in a 40 acre tract of land within the unit, which terminated on January 11, 1961. Their claim arises out of the sale of gas which was produced during the reservation period but reinjected into unit wells for conservation purposes and alleged to have been recovered and sold subsequent to the expiration of that period.[2] Bezzi alleges that the title to the residue gas remained in those having an interest in the unit, although such gas was reinjected into the wells for cycling, repressuring, pressure maintenance, and other unit operations, as authorized by the approved plan of unitization. In denying relief to appellants, the trial court held that when the residue gas was reinjected into its natural environment and the common source of supply, and the gas, being mobile and fugacious, it then became subject to the Oklahoma law of capture.
 
 
 2
 The material facts are not in dispute. On January 11, 1941 Bezzi joined in a warranty deed conveying certain tracts of land to appellees, F. M. Hocker and W. E. Hocker, Jr. This deed reserved to the grantors for a period of 20 years, an undivided one-half interest in the oil and gas underlying the land. On March 24, 1945, oil and gas leases covering this property were executed. These leases were thereafter assigned to appellee Shell Oil Company, and are now in full force and effect. The lessors were to receive a 1/8 royalty from all oil and gas produced and sold during the period, with options not here important. Oil and gas was discovered in Hoxbar Sands underlying the leased lands.
 
 
 3
 On October 26, 1950, the Oklahoma Corporation Commission approved the creation of the Elk City Hoxbar Sand Conglomerate Unit and made all oil and gas production from the unit area subject to the plan of unitization. Appellee Shell Oil Company was designated operator of the unit, subject to the direction of an operating committee.[3]
 
 
 4
 When Shell began operation of the unit, plant faciluties were constructed to process the natural gas produced therefrom for the removal of liquifiable hydrocarbons, which were then sold and the proceeds distributed pursuant to the plan. As authorized by the unit plan, the residue gas was returned to the original structure reservoir, where it commingled with and became part of the virgin gas remaining in the common source of supply. When gas of any kind is used for conservation purposes, the plan provides that no royalties or production payments are required or payable.[4]
 
 
 5
 After the term of Bezzi's reservation expired on January 11, 1961, the unit operator produced, processed and sold gas, a portion of which was believed to be reinjected gas commingled with the virgin gas in the reservoir. It is this gas that Bezzi contends she had title to when it was orginally produced; that such title was not lost by the reinjection procedure; and that she was entitled to be paid therefor although the gas was sold after the expiration of her reserved mineral interests. The trial court held:
 
 
 6
 'The gas injected into the common source of supply was free to move and migrate to any point in the common source of supply, and the Unit Operator had no control over the gas so injected into the reservoir. When the gas was reinjected it became mobile and fugacious and was returned to its wild state in the reservoir. The Unit Operator in a sense had control, or substantial control and possession, over the reinjected gas prior to its reinjection. The Unit Operator, however, had no control or possession over the reinjected gas after it re-entered the reservoir than it had over the virgin gas originally in the reservoir. When the residue gas was reinjected into the reservoir, plaintiff and intervenors had no right, title, or ownership therein, and such gas thereafter became subject to the law of capture.'
 
 
 7
 The Oklahoma courts have not consiered the precise question presented here. It has been held, however, that the owner of land has a qualified title to the oil and gas in and under his land with the exclusive right to produce it, but has no absolute title thereto. Rich v. Doneghey,71 Okl. 204, 177 P. 86, 3 A.L.R. 352. It is recognized that oil and gas are mobile and fugacious, and if it escapes to other lands or comes under another's control, whatever title the original owner had, is lost. It belongs to the person who legally obtains control and possession of it. Carter Oil Co. v. State, 205 Okl. 541, 240 P.2d 787; Magnolia Petroleum co. v. Ball, 203 Okl. 514, 223 P.2d 136; Wright v. Carter Oil Co., 97 Okl. 46, 223 P. 835. See, also, United States v. Stanolind Crude Oil Purchasing Co., 10 Cir., 113 F.2d 194.
 
 
 8
 In determining that title to the reinjected gas was lost because of its fugacious nature and that the gas then became subject to the law of capture, the trial court relied upon West Edmond Salt Water Disposal Ass'n v. Rosecrans, 204 Okl. 9, 226 P.2d 965, appeal dismissed 340 U.S. 924, 71 S.Ct. 500, 95 L.Ed. 667. That case involved the liability of one who injected into underground strata of land, salt water, which migrated, or percolated, beyond the boundaries of the land where injected. While the Supreme Court of Oklahoma was not presented with the precise question here, it did liken salt water to oil, gas, and other fugacious minerals which are subject to the law of capture. The court considered the contention that title to the salt water remained in those who injected it into a well where it commingled with salt water already present and then migrated to plaintiff's land, and, at page 970, said:
 
 
 9
 'Under all the authorities we have been able to find upon the subject, the assumption that the salt water remained the property of defendants after it permeated or penetrated into the Hoover-Tonkawa formation underlying the land of plaintiffs is incorrect. In Willis' Revision of Thornton on the Law of Oil and Gas, Vol. 1, p. 78, section 40, the author, quoting from Westmoreland & Cambria Natural Gas Co. v. DeWitt, 130 Pa. 235, 18 A. 724, 5 L.R.A. 731, says: "Water and oil', said the court, 'and still more strongly gas, may be classed by themselves, if the analogy be not too fanciful, as minerals ferae naturae. In common with animals, and unlike other minerals, they have the power and tendency to escape without the volition of the owner. Their 'fugitive and wandering existence within the limits of a particular tract is uncertain.' They belong to the owner of the land and are part of it, and are subject to his control; but when they escape, and go into other land, or come under another's control, the title of the former owner is gone,"' We think the Supreme Court of Oklahoma has clearly indicated that whatever title Bezzi may have had to the residue gas prior to January 11, 1961, it was lost when that gas was reinjected into the common source of supply and commingled with the virgin gas existing there, becoming subject to the law of capture.
 
 
 10
 Furthermore, in the absence of controlling decisions, this court will accept the determination by the District Court of applicable state law unless convinced to the contrary. Jamaica Time Petroleum Inc. v. Federal Ins. Co., 10 Cir., 366 F.2d 156; Pittsburgh-Des Moines Steel Co. v. American Surety C., of N.Y., 10 Cir., 365 F.2d 412; Bushman Constr. Co. v. Conner, 10 Cir., 351 F.2d 681, cert. denied 384 U.S. 906; Bledsoe v. United States, 10 Cir., 349 F.2d 605.
 
 
 11
 Affirmed.
 
 
 
 [1]
 The other appellants were permitted to intervene and adopt the allegations of the amended complaint filed by Bezzi
 
 
 [2]
 Before the gas was reinjected, it was processel for the removal of liquifiable hydrocarbons, principally propane and butanes. After the processing, the gas is referred to as 'residue gas.'
 
 
 [3]
 When the unit operation became effective, it included eighty-one 40 acre tracts, including the one which is the subject of this action. By subsequent additions, it was enlarged to include 295 such units at the time of trial
 
 
 [4]
 Authority for the unit operator to so utilize the residue gas for the development and operation of the unit, and fixing the rights of interested partes to payment therefor, is found in Section VII of the plan, where it is provided:
 'The unit operator shall have the right to take and utilize or use so much of the unit production as may be necessary or desirable in the development and operation of the unit area, including but without being limited to the use of gas, including residue gas, for cycling, repressuring, pressure maintenance or other operations under this plan of unitization. No royalties, overriding royalties, production payments or other payments shall be required or payable upon or with respect to the portion of the unit production so taken and utilized or used, or that which is unavoidably lost.'