## SMITH v. THE MORMACDALE.

## GAUL v. THE ROBERT LUCKENBACH.

### Nos. 10700, 10701.

United States Court of Appeals
Third Circuit.

Argued May 23, 1952.

Decided July 17, 1952.

Rehearing Denied Sept. 22, 1952.

Abraham E. Freedman, Philadelphia, Pa., William D. Valente, Freedman, Landy & Lorry, Philadelphia, Pa., for appellants.

Thomas E. Byrne, Jr., Philadelphia, Pa., Mark D. Alspach, Krusen, Evans & Shaw, Philadelphia, Pa., for appellees.

Before McLAUGHLIN and STALEY, Circuit Judges, and BURNS, District Judge.

STALEY, Circuit Judge.

We are asked to decide whether a longshoreman, injured on board ship, may maintain a libel in rem against the ship on the grounds of negligence and unseaworthiness, where respondent vessel is owned by libellant's employer and where the employer has secured the payment of compensation under the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424 et seq., 33 U.S.C.A. § 901 et seq. The two appeals before us present the identical issue.

The libel in the appeal at No. 10,700, brought by libellant Smith against the vessel "Mormacdale," alleges that on December 3, 1948, libellant was injured while loading and unloading cargo aboard the respondent vessel in the Port of Philadelphia. Damages are sought because of the alleged unseaworthy condition of the vessel and the alleged negligence of its employees. At the time of the accident, libellant was in the employ of Moore-McCormack Lines, Inc., owner of the "Mormacdale."

The libel in the appeal at No. 10,701 was commenced by libellant Gaul against the vessel "Robert Luckenbach." Gaul avers that he was injured on June 9, 1950, while loading and unloading cargo aboard respondent in the Port of Philadelphia. His action, too, is grounded on the alleged unseaworthiness of the vessel and the negligence of its employees. At the time of the accident, Luckenbach Steamship Company, Inc., was both the employer of libellant and owner of respondent vessel.

Compensation payments were subsequently paid to both men pursuant to the provisions of the Longshoremen's Act.

The district court granted the motion of each respondent to dismiss the libel and enter judgment in its favor, holding that each action was in fact a suit against the employer and was thus barred by Section

5 of the Longshoremen's Act. These are appeals from those orders.

Section 5 of the Act provides: "The liability of an employer prescribed in section 4 of this chapter shall be exclusive and in place of all other liability of such employer to the employee * * * and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee * * * may elect to claim compensation under this chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death. * * *" 44 Stat. 1426, 33 U.S.C. A. § 905.

In an effort to escape the force of the above provision, appellants contend that the vessel is a juridical entity distinct and separate from its owner, who may be concurrently and independently liable for its torts. It is urged that the Longshoremen's Act does not attempt to limit the liability of any entity or person other than the employer, and thus does not affect the historic liability of the vessel.

■ It is abundantly clear that the benefits provided for the employee by the provisions of the Act constitute the limit of the employer's liability. Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 102, 66 S.Ct. 872, 90 L.Ed. 1099; Swanson v. Marra Bros., 1946, 328 U.S. 1, 6, 66 S.Ct. 869, 90 L.Ed. 1045. Where the vessel is the property of the employer, an action against the vessel is realistically an action against the employer; collection of damages out of the ship is, of course, an indirect way of collecting from the owner-employer. Samuels v. Munson S. S. Line, 5 Cir., 1933, 63 F.2d 861. To impose this additional liability on the employer in the situation where he is also ship owner would radically distort the intent of Congress in enacting the Longshoremen's Act.

The so-called independent personality of the ship is a mere convenient conceptual tool. Mr Justice Holmes has termed it "metaphysical confusion." Holmes, "The Common Law" 33. He theorizes that the origin of the concept of liability of inanimate things and animals arose out of a spirit of revenge against "the accursed thing" which was the immediate cause of the injury. Holmes, op. cit. supra at 10. The concept has survived in modern admiralty law because modern considerations generally justify it. Since a ship wanders far from the residence of its owners, it is natural, in a sense, to look to the vessel itself for redress. See 1 Benedict on Admiralty § 11 (6th ed.). The imposition of liability upon the vessel in situations in which the owner is not personally liable, as in the case of the liability for the negligence of a pilot accepted under the compulsion of state law,[1] is in reality the imposition of absolute liability on the owner, with the liability limited to the value of the ship. See Crowell v. Benson, 285 U.S. 22, 41, note 6, 52 S.Ct. 285, 76 L.Ed. 598, citing Chicago R. I. & P. R. Co. v. Zernecke, 1932, 183 U.S. 582, 586, 22 S.Ct. 229, 46 L.Ed. 339; Holmes, op. cit. supra 26–35.

The identical point argued here was raised in Samuels v. Munson S. S. Line, supra. In a well-reasoned opinion, the court pointed out the absurd results which would arise if a longshoreman were permitted to accomplish what is here attempted. We agree with the reasoning and the result of that opinion. See also Vitozi v. S. S. Platano, 1950 Am. Mar. Cas. 1686.

■ The concept of the ship as a distinct juridical entity, while it may be a convenient conceptual tool for many purposes, should not be invoked here to frustrate the clearly manifested intent of Congress to limit the employer's liability to his employee to the remedy provided by the Act. We can draw upon the entire anthology of legal fiction in admiralty and nowhere find the vessel personified to the extent that it has been considered emancipated from its owner. This we would now have to do

---

1. See The China, 1868, 7 Wall. 53, 19 L. Ed. 67, Homer Ramsdell Transp. Co. v. La. Compagne Gen. Trans., 1901, 182 U.S. 406, 21 S.Ct. 831, 45 L.Ed. 1155.

were we to sustain appellants' position. This we are not prepared to do.

The orders of the district court will be affirmed.