Ramon RUIZ PICHIRILO, Respondent, Appellant,

v.

Laureano MAYSONET GUZMAN, Libellant, Appellee.

No. 5650.

United States Court of Appeals First Circuit.

May 29, 1961.

Seymour P. Edgerton, Boston, Mass., Isaias Rodriguez Moreno, San Juan, P. R., Hiller B. Zobel, W. C. Moffett and Bingham, Dana & Gould, Boston, Mass., on the brief, for appellant.

Harvey B. Nachman, San Juan, P. R., Stanley L. Feldstein and Golenbock, Nachman & Feldstein, San Juan, P. R., on the brief, for appellee.

Before WOODBURY, Chief Judge, and MARIS * and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

■■ This is a libel in rem against the M/V Caribe and in personam against her owner (hereinafter respondent) for personal injury sustained by libellant, a longshoreman employed by Bordas & Co., a stevedoring concern engaged in discharging the vessel in the port of San Juan, Puerto Rico. The sole claim is for unseaworthiness, the injury having been caused by an admittedly defective shackle, recently bought. The defense was that the vessel was under demise charter to Bordas. The court ruled that the evidence showed no such charter.[1] This ruling was wrong. A demise charter may be, as this one was claimed to be, by parole. James v. Brophy, 1 Cir., 1895, 71 F. 310, 312. We do not gather the court thought otherwise. We believe the court was misled by testimony of Bordas' representative that the arrangement was not the usual charter party (although he added that "it is a kind of a charter").[2] The witness, a layman, was not qualified to draw legal conclusions. Moreover, his reservations appear to have been that it was neither a time charter, nor a bare boat charter, rather than that there was no charter at all. A demise, of course, is not a time charter, and it need not be of a bare boat. United States v. Shea, 1894, 152 U.S. 178, 14 S.Ct. 519, 38 L.Ed. 403.

■ The evidence showed that respondent, permanently residing within the Dominican Republic, had had no connection with the operation of the Caribe for some five years, except that he had appointed, or "employed," the master. That action would not mean a control of the vessel so as to prevent a demise. See United States v. Shea, supra; Grillea v. United States, 2 Cir., 1956, 229 F.2d 687, 689–690; The Willie, 2 Cir., 1916, 231 F. 865. Bordas' representative testified, without contradiction, that the master was under Bordas' orders. Bordas paid the master, the crew, and all expenses of the vessel, and paid respondent a flat monthly sum. The suggestion that it was merely an agent for respondent is without merit. Libellant offers no explanation why an agent should be making fixed monthly payments to a principal, rather than the reverse. We hold the evidence indisputably shows that Bordas was operating the ship as a demisee. Reed v. United States, 1870, 11 Wall. 591, 601, 78 U.S. 591, 601, 20 L.Ed. 220 ("possession, command, and navigation").

In Vitozi v. Balboa Shipping Co., 1 Cir., 1947, 163 F.2d 286, we held that an owner who has surrendered all control by demise was not liable in personam for unseaworthiness. Possibly we erred in extending this rule indiscriminately to

---

\* Sitting by designation.

1. We are satisfied on the record that with characteristic forthrightness the court did not seek to avoid the necessity of ruling by making a finding that it did not believe testimony which in fact it did believe. Under these circumstances, and since, in addition, this evidence was inherently credible and undisputed, we will accept it without the necessity of

remand. See Union Leader Corp. v. Newspapers of New England, Inc., 1 Cir., 1960, 284 F.2d 582, 587, certiorari denied 365 U.S. 833, 81 S.Ct. 747, 5 L. Ed.2d 744; Texas Co. v. R. O'Brien & Co., 1 Cir., 1957, 242 F.2d 526, 529.

2. Actually, the court inaccurately quoted the witness as having said, "something like a charter, but not a charter."

cases where the unseaworthy condition preceded the demise. See Cannella v. Lykes Bros. S. S. Co., 2 Cir., 1949, 174 F.2d 794, 795, certiorari denied, 338 U.S. 859, 70 S.Ct. 102, 94 L.Ed. 526. But we see no reason to reconsider when, as here, the defective condition arose only after the owner had parted with all possession. See Grillea v. United States, supra, 229 F.2d at pages 689, 690. The judgment in personam against respondent must be set aside.

■ Respondent, as claimant to the vessel, also asks us to dismiss the libel in rem. Since Bordas' obligations under the Puerto Rico Workmen's Compensation Act represent its exclusive liability to its employees, 11 L.P.R.A. ch. 1, § 21, an obligation obviously not here involved, and since the owner of the vessel is not personally liable at all, respondent contends that the vessel should not be independently charged. We agree.

■ It is generally accepted that the in rem action in admiralty and the maritime lien are correlative. "Where one exists, the other can be taken, and not otherwise." The Rock Island Bridge, 1867, 6 Wall. 213, 215, 73 U.S. 213, 215, 18 L.Ed. 753; see The Resolute, 1897, 168 U.S. 437, 440, 18 S.Ct. 112, 42 L.Ed. 533; The Lottawanna, 1874, 21 Wall. 558, 581, 88 U.S. 558, 581, 22 L.Ed. 654; 1 Benedict, Admiralty 18 (6 ed. Knauth 1940); Gilmore & Black, Admiralty 510 (1957); Price, Maritime Liens 12 (1940); Robinson, Admiralty 362 (1939). This does not solve our problem, because we could hold that a lien had arisen from a claim against the ship notwithstanding the absence of a claim against any distinct juridical person, but it does focus attention on the necessity of an underlying claim. The concept of a ship as an individual may have an aura of romance befitting the lore of the sea, but to regard it as an entity having separate responsibilities independent of the primary legal responsibility of some human actor has little rational appeal.

This is not to say that the "personification" of the vessel is not a convenient shorthand method of expressing legal results. See Price, Maritime Liens 16 (1940); Hebert, "The Origin and Nature of Maritime Liens," 1930, 4 Tul.L. Rev. 381, 392. It is something else to use the characterization to achieve them.

In a variety of situations courts have refused to charge the ship when neither the owner nor the party in possession, nor the agents of either, were personally liable. In Queen of the Pacific, 1901, 180 U.S. 49, 21 S.Ct. 278, 45 L.Ed. 419, it was argued that a stipulation in a bill of lading requiring all claims against a shipowner to be brought within a certain time did not prevent an in rem action against the vessel after that time. The court rejected this, saying, "The 'claim' is in either case against the company, though the suit may be against its property." 180 U.S. at page 53, 21 S.Ct. at page 279. (Ital. in orig.) In The Oceanica, 2 Cir., 1909, 170 F. 893, 898, certiorari denied 215 U.S. 599, 30 S.Ct. 400, 54 L.Ed. 343, it was alleged that a tug had negligently caused the loss of her tow. The towage contract exempted the tug owner from negligence.[3] The Court refused to charge the tug. That this was not simply a question of contractual interpretation is made clear by The Elizabeth M. Miller, D.C.W.D.N.Y. 1932, 3 F.Supp. 171, 172–173, where the tug was operated by an allegedly exempted demisee. The Western Maid, 1922, 257 U.S. 419, 42 S.Ct. 159, 66 L.Ed. 299, involved several collisions in which vessels owned outright or pro hac vice by the United States were assumed to be at fault. Sovereign immunity at that time prevented suits against the government. The court refused to hold that a lien had attached which was enforceable when the ship passed into private hands. More recently, in Noel v. Isbrandtsen Co., 4 Cir., 1961, 287 F.2d 783, in rem liability was not established because of the failure to show any personal

3. But see Bisso v. Inland Waterways Corp., 1955, 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911.

obligation owed to the libellant to furnish a seaworthy ship.

■ There is nothing in the doctrine of unseaworthiness that should lead to a different result. It is true that one speaks of unseaworthiness "of the vessel" and of "liability without fault," but this cannot obscure the fact that liability depends upon a legal obligation growing out of a relationship between individuals: the injured party and the one charged with preventing the injury.[4] See United New York and New Jersey Sandy Hook Pilots Association v. Halecki, 1959, 358 U.S. 613, 616, 79 S.Ct. 517, 3 L.Ed.2d 541; Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 95–96, 104 (dissenting opinion), 66 S.Ct. 872, 90 L.Ed. 1099; Mahnich v. Southern Steamship Co., 1944, 321 U.S. 96, 100, 103–104, 64 S.Ct. 455, 88 L. Ed. 561; The Osceola, 1903, 189 U.S. 158, 171, 175, 23 S.Ct. 483, 47 L.Ed. 760; cf. Grillea v. United States, supra, 229 F.2d at page 690. A ship does not make a warranty. Whether one speaks in terms of holding out, cf. West v. United States, 1959, 361 U.S. 118, 122, 80 S.Ct. 189, 4 L.Ed.2d 161, or duty owed, Halecki, supra, unseaworthiness liability requires something more than a mere defective condition of the vessel. See Noel v. Isbrandtsen Co., supra.

In Smith v. The Mormacdale, 3 Cir., 1952, 198 F.2d 849, certiorari denied 345 U.S. 908, 73 S.Ct. 648, 97 L.Ed. 1344, a longshoreman who was limited in his rights against his employer by the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901–950, was held unable to proceed against the vessel which was owned by his employer, although the vessel's unseaworthy condition was alleged. Following the teaching of the cases earlier discussed, we are not prepared to reach a different conclusion simply because title to the vessel is in the hands of another party who is also not personally liable. Cf. Pedersen v. Bulklube, D.C.E.D.N.Y.1959, 170 F.Supp.

462, 466–467, affirmed, 274 F.2d 824, certiorari denied 364 U.S. 814, 81 S.Ct. 44, 5 L.Ed.2d 46; Vitozi v. Platano, D.C.S. D.N.Y.1948, 1950 A.M.C. 1686; The Elizabeth M. Miller, D.C.W.D.N.Y.1932, 3 F.Supp. 171, 172–173 (dictum). But see Leotta v. The S. S. Esparta, D.C.S.D. N.Y.1960, 188 F.Supp. 168, 169, infra; Reed v. The Yaka, D.C.E.D.Pa.1960, 183 F.Supp. 69, infra. Nor, by some process of inverse reasoning, does this lead us to say that a demisor is personally liable for a condition of unseaworthiness created by the demisee. It should be enough that his ship is subject to a lien to secure whatever obligation the demisee has personally incurred in his operation of the ship. See The Barnstable, 1901, 181 U. S. 464, 21 S.Ct. 684, 45 L.Ed. 954.

It is true that in Grillea v. United States, 2 Cir., 1956, 232 F.2d 919(2–1), the court reached the opposite result. It did so without discussion, and with only the simple statement, "we see no reason why a person's property should never be liable unless he or someone else is liable 'in personam.'" 232 F.2d at page 924. With all deference we think so novel a principle needs more support than a statement that the court sees no reason against it. Grillea seems the more surprising in that Judge Hand, the writer of the majority opinion, had observed not long before, after discussing the ancient doctrine of deodand, "Disputes arise between human beings, not inanimate things; * * * a vessel * * * is, and can be, nothing but the measure of [claimant's] stake in the controversy." Burns Bros. v. The Central R. R. of New Jersey, 2 Cir., 1953, 202 F.2d 910, 913.

Grillea has resulted in some discussion of the effect of an indemnity clause in the demise. Leotta v. The S. S. Esparta, D.C.S.D.N.Y.1960, 188 F.Supp. 168. See also Reed v. The Yaka, D.C.E.D.Pa.1960, 183 F.Supp. 69. We would agree with Yaka that the existence of an indemnity clause is beside the point. But we can-

---

4. Liability without fault in analogous situations has not led courts to describe the result as other than an adjustment of loss between the parties involved.

See, e. g., Exner v. Sherman Power Constr. Co., 2 Cir., 1931, 54 F.2d 510, 512–514, 80 A.L.R. 686. See generally, Prosser, Torts 317–18 (2d ed. 1955).

not agree with Yaka that the fact that the demising owner is eventually going to get the boat back is determinative. This was answered by The Western Maid, supra. Cf. Pedersen v. Bulklube, supra.

We do not reach respondent's other contentions, one of which appears to have some merit.

Judgment will be entered vacating the judgment of the District Court and remanding the action for entry of a judgment of dismissal.