Elijah REED, Appellee,

v.

STEAMSHIP YAKA, Her Engines, Boilers, Machinery, etc. (Waterman Steamship Corporation, Owner and Claimant), Appellant in No. 13,600,

and

Pan-Atlantic Steamship Corporation, Appellant in No. 13,601.

Nos. 13,600, 13,601.

United States Court of Appeals Third Circuit.

Argued Dec. 18, 1961.

Filed April 27, 1962.

Rehearing Denied July 16, 1962.
As Amended July 26, 1962.

Biggs, Chief Judge, and Staley, Circuit Judge, dissented from order refusing to grant rehearing.

Harrison G. Kildare, Philadelphia, Pa. (Rawle & Henderson, Philadelphia, Pa.,

Thomas F. Mount, Philadelphia, Pa., of counsel, on the brief), for appellant in 13,600.

T. E. Byrne, Jr., Philadelphia, Pa. (Krusen, Evans & Byrne, Philadelphia, Pa., on the brief), for appellant in 13,-601.

Joseph Boardman, Philadelphia, Pa. (Freedman, Landy & Lorry, Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

Libellant Reed, the appellee here, is a longshoreman who was injured while employed by appellant Pan-Atlantic Steamship Corporation and engaged in loading the steamship Yaka. The accident occurred in the hold of the ship when a wooden pallet upon which Reed was standing broke. The pallet was part of staging which the longshoremen themselves had brought on board the ship and had erected.

The libel was solely in rem against the Yaka. The ship was and is owned by Waterman Steamship Corporation, which, as owner and claimant, has defended this libel. However, at the time of the accident in suit the ship had been demised to and was being operated by Pan-Atlantic Steamship Corporation as a bareboat charterer. This libel was instituted after the expiration of the demise and the return of the ship to its owner.

The libel was filed in the Eastern District of Pennsylvania at a time when the Yaka was not within that jurisdiction. However, Waterman answered the libel on its merits averring that it "voluntarily appeared as claimant to avoid attachment and delay of the vessel if it should subsequently be present" within the jurisdiction. Waterman also impleaded Pan-Atlantic as the demisee of the ship at the time of the accident, alleging that Pan-Atlantic was obligated to indemnify the ship and its owner for any loss they might suffer as a result of the principal claim.

A trial on the question of liability resulted in a permissible finding that libellant's injury had been caused by an unseaworthy condition created by Pan-Atlantic's employees during the demise. 1960, 183 F.Supp. 69. The court then concluded as a matter of law that, although the Longshoremen's and Harbor Workers' Act prevented Pan-Atlantic from being liable to its employee Reed for breach of warranty of seaworthiness, the ship was nevertheless accountable in rem for the injuries caused by its unseaworthiness. At the same time, liability over was imposed upon Pan-Atlantic. Both Waterman, on behalf of the Yaka, and Pan-Atlantic have appealed.

On this appeal, it is argued for the first time that jurisdiction in rem never attached in this case because the ship was never arrested and no bond or stipulation for value was ever filed.[1] The second and more fundamental contention of both appellants is that the accident did not and could not subject the ship to any liability in rem because it did not create any personal liability against anyone having an interest in the ship.

▮ The first point requires only brief analysis. While the power of an admiralty court to exercise authority over a ship normally depends upon the arrest of the ship within the court's territorial jurisdiction, a claimant can waive this requirement and consent to jurisdiction so far as its interest in the vessel is concerned. The Willamette, 9th Cir. 1895, 70 F. 874. See generally 2 Bene-

1. This contention is advanced by Pan-Atlantic, which had no interest in the Yaka when this proceeding was instituted against the ship. Waterman, the owner then in possession, has not challenged the venue. In these circumstances, while we shall consider the issue on its merits, the standing of Pan-Atlantic to raise it is at least doubtful. Compare Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, where it was made clear that the third-party defendant's rights and duties must be viewed independently of the legal relationship between the longshoreman and the shipowner.

dict, Admiralty, Knauth ed. 1940, § 242. A recent decision of the Supreme Court, Continental Grain Co. v. Barge FBL–585, 1960, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed. 2d 1540, is instructive. In that case a ship was beyond the jurisdiction of the court when a proceeding in rem was filed against it. However, the owner, as claimant, gave the libellant a "letter undertaking" stipulating that the rights of the parties would " 'for all purposes be * * * precisely the same as they would have been had the vessel, in fact, been taken into custody by the United States Marshal under said *in rem* process, and released by the filing of claim and release bond * * *.' " Id. at 29, 80 S.Ct. at 1476, 4 L.Ed.2d at 1547. The Supreme Court treated this submission as perfecting the jurisdiction of the court. We think the voluntary appearance of the claimant to respond to the libel on its merits in this case was an equivalent and equally effective undertaking that its interest in the ship should be subject to the authority of the court. Cf. United States v. Ames, 1879, 99 U.S. 35, 25 L.Ed. 295; J. K. Welding Co. v. Gotham Marine Corp., S.D.N.Y.1931, 47 F.2d 332.

We come now to the basic contention that the imposition of liability on the ship was improper because the accident in suit gave rise to no personal liability.

A similar question was carefully considered and decided by this court in Smith v. The Mormacdale, 1952, 198 F.2d 849, cert. denied, 1953, 345 U.S. 908, 73 S.Ct. 648, 97 L.Ed. 1344. There the owner and operator of a ship employed a stevedore who was injured as a result of the unseaworthiness of the vessel. Since the Longshoremen's and Harbor Workers' Act, in establishing a workmen's compensation scheme, deprived an injured employee of all other rights against his employer, the injured longshoreman took no action against the shipowner but libeled the ship, claiming that it was directly and independently liable in rem for the consequences of its unseaworthiness. However, this court described such a proceeding against the ship itself as merely a procedural device of admiralty for more

readily effectuating the liability of some jural person who has breached some personal obligation, in that case the absolute duty that the law imposes upon a shipowner to maintain a seaworthy vessel. We looked through the fiction of "the so-called independent personality of the ship" and recognized that "an action against the vessel is realistically an action against" the owner, 198 F.2d at 850. Analytically, there had to be a pre-existing maritime lien upon which to base the remedy of recovery from or through the ship, and since the owner-employer was not liable to its injured employee, there was no underlying obligation that could have given rise to such a lien. Accord, Samuels v. Munson S. S. Line, 5th Cir. 1933, 63 F.2d 861; cf. Continental Grain Co. v. Barge FBL–585, supra. See generally Gilmore & Black, Admiralty, 1957, 483–510.

■ The case at hand is different only in that the suing longshoreman's employer was a bareboat charterer rather than an owner. But for present purposes that is not a significant distinction. In admiralty such a demisee acquires full control and authority over the ship and the rights and duties which attend such dominion. He takes the owner's place for the term of the demise. United States v. Shea, 1894, 152 U.S. 178, 14 S.Ct. 519, 38 L.Ed. 403; Leary v. United States, 1871, 81 U.S. (14 Wall.) 607, 610, 20 L.Ed. 756 (dictum); Gilmore & Black, op. cit. supra at 215–16. Thus, the doctrine of Smith v. The Mormacdale is applicable to this case and prevents the present libellant from recovering against the Yaka unless someone other than his employer breached a duty to provide longshoremen with a seaworthy ship.

■ The only other person who was even arguably so obligated is Waterman. Unquestionably, as owner, Waterman warranted the seaworthiness of the vessel as transferred to the bareboat charterer. Work v. Leathers, 1878, 97 U.S. 379, 24 L.Ed. 1012. Indeed, the charter so provided. But the unseaworthiness here resulted solely from the

subsequent conduct of the demisee's employees in bringing a defective appliance onto the ship. The Court of Appeals for the Second Circuit has recently considered this very problem and has ruled, correctly we think, that an owner is not liable for unseaworthiness, originating and causing injury while a demisee is operating a ship. To that court it seemed neither fair to the demisor nor necessary to protect those who should deal with the ship during the term of the charter that this type of liability without fault should "extend beyond the demisee, on whose initiative and for whose profit the venture had been undertaken * * * [to] include the demisor, who has done no more than put the demisee into possession of the ship * * *." Grillea v. United States, 2d Cir. 1956, 229 F.2d 687, 690. We think this position is sound and, therefore, that libellant cannot base his action on any warranty by Waterman that its demisee would not bring aboard unseaworthy appliances.

■ Thus analyzed, this suit is an attempt to use the procedural device of a libel in rem against a ship for injury caused by its unsafe condition in the absence of any underlying obligation of anyone to respond in damages for breach of warranty of seaworthiness. In essence libellant is asserting that a maritime lien has arisen in his favor though he cannot show any lien-creating obligation. In these circumstances, we think the libellant was not entitled to recover.

We recognize that a contrary result has been reached by the Court of Appeals for the Second Circuit. Grillea v. United States, 1956, 232 F.2d 919. It seems to us, however, that this result was achieved by incorrectly treating the fictional personification of the ship as something more than the procedural device that it is. The same problem subsequently came before the Court of Appeals for the First Circuit in Ruiz Pichirilo v. Guzman, 290 F.2d 812, cert. granted, 1961, 368 U.S. 895, 82 S.Ct. 176, 7 L.Ed.2d 92. Disagreeing with Grillea, that court reasoned as we do that the absence of any

lien-creating personal obligation of the demisor or the demisee precluded any recovery against the ship in rem.

The judgment will be reversed.

## On Petition for Rehearing.

Before BIGGS, Chief Judge and McLAUGHLIN, KALODNER, STALEY, HASTIE, GANEY and SMITH, Circuit Judges.

### PER CURIAM.

The petition for rehearing presents nothing of significance that was not fully considered in deciding this appeal.

The petition is denied.

BIGGS, Chief Judge (dissenting).

The majority view that no *in rem* obligation came into existence because there was no subsisting *in personam* obligation is untenable. The majority view seems to be contrary to the reasoning of the Supreme Court in Plamals v. The Pinar Del Rio, 277 U.S. 151, 48 S.Ct. 457, 72 L.Ed. 827 (1928), and Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). A bare-boat charter cannot insulate the ship owner from liability. The Supreme Court again and again has held that the ship owner has a non-delegable absolute duty to maintain the vessel in a seaworthy condition. A charterer under circumstances such as those at bar does not gain immunity because of the Longshoremen's and Harbor Workers' Compensation Act. I think the case is wrongly decided for it takes away from the longshoreman the very important protective warranty of seaworthiness and limits Sieracki greatly.

But quite aside from the foregoing, the Supreme Court in Maysonet Guzman v. Ruiz Pichirilo, 369 U.S. 698, 82 S.Ct. 1095, 8 L.Ed.2d 205 (1962), expressly left open the issue of whether a demise * * "relieves the owner of his traditional duty to maintain a seaworthy vessel." Moreover, the Supreme Court in note 2 cited to the text in Pichirilo specifically referred to our decision in the instant case and stated that we had aligned ourselves

 

"*in toto* with the position of the Court of Appeals for the First Circuit." See Ruiz Pichirilo v. Maysonet Guzman, 1 Cir., 290 F.2d 812 (1961). I think that the importance of the case at bar justifies rehearing by the court en banc. I therefore must respectfully dissent from the order refusing to grant rehearing.

STALEY, Circuit Judge (dissenting).

I join Chief Judge BIGGS in his conclusion in his dissent. I read his dissent as not disturbing Smith v. The Mormacdale, 198 F.2d 849 (C.A.3, 1952), where the employer was also the shipowner.